**PUBLISHED**

COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, McCullough and Senior Judge Haley
Argued at Salem, Virginia

WILLIAM SCOTT INGRAM

                                          OPINION BY
v.       Record No. 1385-12-3           JUDGE D. ARTHUR KELSEY
                                          APRIL 23, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

James C. Martin (Martin & Martin, on briefs), for appellant.

Karen A. Taylor, Special Counsel (Kenneth T. Cuccinelli, II,
Attorney General; Rita W. Beale, Deputy Attorney General;
Allyson K. Tysinger, Senior Assistant Attorney General and
Chief, on brief), for appellee.

William Scott Ingram appeals an order entered pursuant to Code § 37.2-1101, which

required him to undergo psychiatric and medical treatment against his will.  On appeal, Ingram

claims the circuit court should have impanelled a jury to decide his case and, in any event,

should not have authorized a course of treatment that violated his basic beliefs.  We find

Ingram's sufficiency argument moot and reject his jury trial argument.

I.

In 1995, Ingram was found not guilty of malicious wounding by reason of insanity.

Since that time, he has been a patient in state psychiatric facilities.  Doctors have diagnosed

Ingram with various psychiatric conditions (bipolar type schizoaffective disorder, narcissistic

and antisocial personality disorder, and polysubstance dependence), as well as several medical

conditions (hyperthyroidism, acid reflux, gastroid reflux, vitamin D deficiency, a hiatal hernia,

and a benign prostate hypertrophy).

In 2009, Ingram's treating psychiatrist filed a petition seeking court-ordered treatment

pursuant to Code § 37.2-1101.  The general district court issued an order requiring treatment for

180 days.  After the circuit court affirmed the ruling in a *de novo* hearing, Ingram appealed to us, claiming the evidence was insufficient as a matter of law to justify the order.  Because the 180-day order had expired before the appeal was heard, we dismissed the case as moot.  Ingram v. Commonwealth, No. 2436-09-3, 2010 Va. App. LEXIS 254 (June 22, 2010) (unpublished).

In 2012, Ingram's treating psychiatrist again petitioned for court-ordered treatment of Ingram.  The general district court granted the petition and Ingram again appealed, seeking a *de novo* hearing in circuit court.  This time, Ingram demanded that the case be decided by a jury. The circuit court denied the request for a jury, conducted an evidentiary hearing, and granted the petition for court-ordered treatment.  The circuit court's 180-day order expired under its own terms on January 19, 2013 — shortly before the matter was heard by us.  The Commonwealth made a motion seeking to dismiss the appeal as moot.

II.

A.  MOOTNESS — EXPIRED 180-DAY ORDER

We first address whether this case is moot, now that the most recent 180-day treatment order has expired under its own terms.  The circuit court entered the order pursuant to Code § 37.2-1101(A), which authorizes

> treatment for a mental or physical disorder on behalf of an adult person, in accordance with this section, if [the judge or special justice] finds upon clear and convincing evidence that (i) the person is either incapable of making an informed decision on his own behalf or is incapable of communicating such a decision due to a physical or mental disorder and (ii) the proposed treatment is in the best interest of the person.

See also Code § 37.2-1101(G) (listing additional necessary findings).  The statute directs the court not to issue a treatment order if it "is proven by a preponderance of the evidence to be contrary to the person's religious beliefs or basic values or to specific preferences stated by the person before becoming incapable of making an informed decision, unless the treatment is

necessary to prevent death or a serious irreversible condition." Code § 37.2-1101(G)(4). The duration of such orders may vary, but one authorizing the "[a]dministration of antipsychotic medication" cannot exceed 180 days. Code § 37.2-1102(3).

On appeal, Ingram challenges the treatment order on two grounds: First, he claims he had a constitutional and statutory right to a jury trial. Second, he contends the circuit court should have concluded that his "religious beliefs or basic values," Code § 37.2-1101(G)(4), forbade the recommended treatment. The Commonwealth argues that both issues are moot now that the circuit court order has expired.

We accept the first premise of the Commonwealth's argument. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Chafin v. Chafin, 133 S. Ct. 1017, 1018 (2013) (quoting Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726 (2013)); see also Daily Press, Inc. v. Commonwealth, 285 Va. 447, 452, ___ S.E.2d ___, ___ (2013). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." Already, LLC, 133 S. Ct. at 727 (citation and internal quotation marks omitted).[1]

"'Advisory opinions represent an attenuate exercise of judicial power,' Va. State Police v. Elliott, 48 Va. App. 551, 553, 633 S.E.2d 203, 204 (2006), one which we traditionally avoid in all but the most extenuating circumstances." Pilson v. Commonwealth, 52 Va. App. 442, 446, 663 S.E.2d 562, 564 (2008). Like many courts, however, we acknowledge "there may be narrow circumstances in which a court may decide a case despite the absence of an actual, ongoing

---

[1] It does not matter that the circuit court's 180-day order expired after Ingram filed his appeal. Even if a case is alive at the time of filing, "subsequent events can moot the claim." Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013) (citing Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011)).

- 3 -

dispute — like when the underlying controversy is one capable of repetition, yet evading review." Elliott, 48 Va. App. at 554, 633 S.E.2d at 204.

This exception to mootness should be used "sparingly" and usually only in cases that are "short-lived by nature." Daily Press, Inc., 285 Va. at 452, ___ S.E.2d at ___. Such "exceptional situations" typically involve "disputes of abbreviated duration where the party seeking review can make a reasonable showing that he will again be subjected to the alleged illegality." Elliott, 48 Va. App. at 554, 633 S.E.2d at 204-05 (citations and internal quotation marks omitted). Compare United States v. Juvenile Male, 131 S. Ct. 2860, 2865 (2011) (refusing to apply the capable-of-repetition doctrine where 21-year-old defendant "will never again be subject to . . . juvenile supervision"), with Turner v. Rogers, 131 S. Ct. 2507, 2515 (2011) (applying the capable-of-repetition doctrine where "there is a more than reasonable likelihood that [defendant] will again be subjected to the same action" (internal quotation marks omitted)).

Only part of Ingram's appeal passes this exacting standard.[2] His first argument claims a right to a jury trial. Declared legally insane nearly twenty years ago, Ingram will likely be the subject of future treatment petitions. Each one could introduce exactly the same jury issue. The issue presents a question of law wholly unaffected by the specific facts surrounding any given petition. And the issue would arise, as it already has, in a short-lived proceeding challenging a judicial order that could easily expire before it is reviewed on appeal. Accord Washington v. Harper, 494 U.S. 210, 219 (1990) (holding it "likely" that a state psychiatric center would "seek

---

[2] During oral argument on appeal, counsel for the Commonwealth questioned whether an appeal can be segmented between moot and non-moot issues. See Oral Argument Audio at 18:24 to 18:49. Settled law permits this appellate practice. See Powell v. McCormack, 395 U.S. 486, 497 (1969) ("[w]here one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy"); Bahnmiller v. Derwinski, 923 F.2d 1085, 1089 (4th Cir. 1991) (holding where "the case is moot except as to [a single] question," the "proper course of action is to dismiss the appeal in part . . . and decide the remaining live issues on appeal"); accord Deakins v. Monaghan, 484 U.S. 193, 201 (1988); Univ. of Tex. v. Camenisch, 451 U.S. 390, 393-94 (1981).

- 4 -

to administer antipsychotic medications" to an inmate). Given these unusual circumstances, we believe the jury trial issue presents an "exceptional" situation that is "capable of repetition, yet evading review." Elliott, 48 Va. App. at 554, 633 S.E.2d at 204.

The same cannot be said for Ingram's challenge to the sufficiency of the evidence supporting the now-expired order. In the circuit court, Ingram testified the treatment violated his "personal beliefs" and "basic values" protected by Code § 37.2-1101(G)(4). Appellant's Br. at 15. Ingram said he had "fallen away" from his former religious views (which he had professed in his earlier case) and now plays in a "rock band" that, he explained, is "sort of like a religion to me." App. at 77. As his counsel conceded on appeal, the facts of this case are quite different from those in Ingram's earlier appeal. See Oral Argument Audio at 5:55 to 6:01. And the facts are likely "going to change" if the circuit court enters future treatment orders. Id. at 2:31 to 2:33.

Given the indeterminate nature of the facts underlying Ingram's sufficiency argument, we have no confidence that a later appeal would present an analogous fact pattern justifying a ruling on the now-expired treatment order. Although a sufficiency argument of some kind may be capable of repetition in a later appeal, it likely will not be on the same grounds as those asserted in the present appeal. For this reason, it would be imprudent for us to address the sufficiency issue under the capable-of-repetition, yet-evading-review doctrine.[3]

## B. JURY TRIAL RIGHT

Code § 37.2-1101(A) empowers a "circuit court or district court judge or special justice" to issue involuntary treatment orders. Subsection G requires "the court" to make specific findings prior to issuing the order. Subsection H makes clear that "the court" should determine

---

[3] That said, we will consider a request by Ingram in any future appeal to expedite appellate review so as to minimize the possibility that a treatment order will expire before we have the opportunity to review a sufficiency challenge. Ingram may also seek a stay pending appeal if the circumstances warrant it. See Code § 8.01-676.1(J).

- 5 -

the scope of the treatment covered by the order. Code § 37.2-1102 similarly authorizes "the court" to order certain actions under specific conditions. The statutory scheme assigns the decisionmaking duties entirely to the court and makes no allowance for jury trials on any issue.[4]

For two reasons, Ingram claims he nonetheless had the right to a jury in the circuit court: (i) Code § 37.2-1101's bench trial procedure violates federal and state constitutional law guarantees of a right to a jury trial, and (ii) Code § 8.01-336(D) provides a statutory right to have a jury decide a plea in equity. We find neither ground supports Ingram's argument.

### (i) FEDERAL & STATE CONSTITUTIONAL RIGHTS TO A JURY

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Ingram correctly claims his right to object to involuntary treatment implicates a liberty interest and thus entitled him to procedural due process. See Sell v. United States, 539 U.S. 166, 178-79 (2003) (discussing Riggins v. Nevada, 504 U.S. 127, 134 (1992); Harper, 494 U.S. at 221).[5]

Although due process provides a battery of pre-deprivation procedural safeguards, it does not uniformly include — either expressly or implicitly — a right to trial by jury. See McKeiver v. Pennsylvania, 403 U.S. 528, 545 (1971) ("[T]rial by jury in the juvenile court's adjudicative stage is not a constitutional requirement" of due process.); see also United States v. Sahhar, 917 F.2d 1197, 1207 (9th Cir. 1990) ("McKeiver held that trial by jury is neither a necessary element of the fundamental fairness guaranteed by the due process clause, nor an essential component of

---

[4] By contrast, a person subject to an involuntary admission under Title 37.2, Ch. 8, Art. 5 of the Code has a statutory right to a jury in the circuit court on *de novo* appeal. Code § 37.2-821(B).

[5] Ingram does not assert, and thus we do not address, whether any alleged *substantive* due process right precludes the involuntary treatment ordered by the circuit court. He argues only that procedural due process principles guarantee a right to a jury trial.

accurate factfinding."); <u>United States v. Hill</u>, 538 F.2d 1072, 1075 (4th Cir. 1976).  To be sure, procedural due process does not even require "a judicial decisionmaker" to authorize "involuntary treatment."  <u>Harper</u>, 494 U.S. at 228.  Thus, neither the Due Process Clause of the Fourteenth Amendment nor its analogue in the Virginia Constitution[6] guarantees Ingram the right to a jury trial in an involuntary treatment proceeding.

The Sixth Amendment to the United States Constitution guarantees a jury trial in "all criminal prosecutions."  It tracks Article III's command that the "trial of all crimes, except in cases of impeachment, shall be by jury."  U.S. CONST. art. III, § 2.  Despite its literal scope, the Sixth Amendment's right to a jury does not apply to criminal offenses presumed to be petty because they could not result in more than six months incarceration.  <u>See</u> <u>Lewis v. United States</u>, 518 U.S. 322, 326 (1996); <u>Duncan v. Louisiana</u>, 391 U.S. 145, 159 (1968).  The constitutional right to a jury does not apply in Ingram's case because his was not a criminal proceeding and, even if it were, it could not have resulted in more than six months of incarceration.

The Seventh Amendment to the United States Constitution guarantees a right to a jury trial in "suits at common law" where more than twenty dollars is in dispute.  This provision of the Federal Bill of Rights, however, has never been applied to state courts.  <u>See</u> <u>McDonald v. Chicago</u>, 130 S. Ct. 3020, 3035 n.13 (2010); <u>Minneapolis & St. Louis R. Co. v. Bombolis</u>, 241 U.S. 211, 217 (1916).  Thus, the only constitutional right to a civil jury in Virginia courts arises, if at all, under Article I, § 11 of the Virginia Constitution.  <u>See</u> <u>also</u> Code § 8.01-336(A).

The right to a jury trial under the Virginia Constitution does not apply "to those proceedings in which there was no right to jury trial when the Constitution was adopted."

---

[6] "Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both." <u>Shivaee v. Commonwealth</u>, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005); <u>see</u> <u>also</u> <u>Caprino v. Commonwealth</u>, 53 Va. App. 181, 185 n.1, 670 S.E.2d 36, 38 n.1 (2008).

Stanardsville Volunteer Fire Co. v. Berry, 229 Va. 578, 583, 331 S.E.2d 466, 469 (1985) (citing

Bowman v. Va. State Entomologist, 128 Va. 351, 372, 105 S.E. 141, 148 (1920)).[7] Put another

way, the "constitutional right to a civil jury is as extensive as the common law right in 1776."

W. Hamilton Bryson, Virginia Civil Procedure 431 (3d ed. 1997) (footnote omitted). "Since the

constitutional guarantee of jury trial in civil cases attaches only to common law actions as they

existed in 1776, statutes creating a new cause of action need not provide for trial by jury." 1

A.E. Dick Howard, Commentaries on the Constitution of Virginia 247-48 (1974) (footnote

omitted).

The involuntary treatment petition filed against Ingram pursuant to Code § 37.2-1101

bears none of the characteristics of what we think of as a traditional common law proceeding.

See Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry, 494 U.S. 558, 570 (1990)

("Generally, an action for money damages was 'the traditional form of relief offered in the courts

of law.'" (quoting Curtis v. Loether, 415 U.S. 189, 196 (1974))); Dan B. Dobbs, Remedies § 1.1,

at 3 (1973) ("The damages remedy was a legal remedy, and the injunction and most other

coercive remedies were equitable."). The petition does not seek compensatory or punitive

damages, attempt to adjust the rights and liabilities of antagonistic litigants, or request

retrospective relief of any kind. A petition under Code § 37.2-1101, therefore, looks nothing like

the classical common law cause of action for damages.

---

[7] See also Bowman, 128 Va. at 372, 105 S.E. at 148 ("It has been long well settled that neither the State nor Federal Constitution guarantees or preserves the right of trial by jury except in those cases where it existed when these Constitutions were adopted."); accord Isbell v. Commercial Inv. Assocs., 273 Va. 605, 617-18, 644 S.E.2d 72, 78 (2007) (reaffirming holding of Bethel Inv. Co. v. City of Hampton, 272 Va. 765, 636 S.E.2d 466 (2006), that Va. Const., art. I, § 11 "is not applicable to proceedings in which there was no right to jury trial when the Constitution was adopted"); Martin P. Burks, Common Law and Statutory Pleading and Practice § 270, at 480 (1952) (The Virginia constitutional right to a jury in civil cases, Judge Burks explained, "is not applicable to that class of cases where no jury was allowed at the time the provision was first adopted." (footnote omitted)).

That said, in the common law — as in most everything else — appearances can be deceiving. Though wholly unrelated to claims for monetary damages, the ancient common law writ of "*de idiota inquirendo*" authorized juries to "inquire whether a man be an idiot or not" and, if so, to transfer "the profits of his lands and the custody of his person" to the king or his designee. 1 William Blackstone, Commentaries on the Law of England *303. A similar writ could be issued against a "*non compos mentis*," described in the common law as a mere "lunatic" who "by disease, grief, or other accident, hath lost the use of his reason" yet still has "lucid intervals." Id. at *304.

These common law writs, however, have little in common with a Code § 37.2-1101 proceeding. Code § 37.2-1101 appears to be a novelty of statutory law, seeking only to administer medical treatment (albeit involuntarily) to an individual suffering from a serious mental or physical disorder.[8] Unlike the common law writs, Code § 37.2-1101 does not attempt to affect the property rights of a patient or place him indeterminately in the custody of the state. Instead, Code § 37.2-1101 represents a uniquely modern application of the *parens patriae* duty of the state to protect those "incapable of making an informed decision" by attempting to ameliorate their illnesses in a manner consistent with the needs of society balanced with the deeply held religious or basic values of the individual.

---

[8] We do not discuss the common law writ of *habeas corpus* because it did not historically (and does not now) entitle the petitioner or respondent to a trial by jury. See 8 James W. Moore et al., Moore's Federal Practice § 38.33[11], at 38-148 (3d ed. 2013) ("Neither the petitioner nor the respondent has a constitutional or statutory right to jury trial in a habeas corpus proceeding. There was no common law right of jury trial in habeas corpus proceedings, so there is no such right preserved by the Seventh Amendment."); Paul D. Halliday, Habeas Corpus: From England to Empire 7 (2010) (noting the "core principle" of habeas corpus is "*that* the judge judges" and the "central fact of habeas corpus" is "that a judge should hear the sighs of all prisoners"); id. at 74 (describing the "king's nearly divine power to command the bodies of his subjects . . . through his judges using habeas corpus").

For us to conclude that Code § 37.2-1101 unconstitutionally deprived Ingram of his common law right to a jury, we would need far better analogies than these two writs. As has been have often said, Virginia courts "must resolve 'any reasonable doubt regarding a statute's constitutionality in favor of its validity.'" Montgomery Cnty. v. Va. Dep't of Rail and Pub. Transp., 282 Va. 422, 435, 719 S.E.2d 294, 300 (2011) (citation omitted). The presumption of constitutionality is "one of the strongest known to the law." Boyd v. Cnty. of Henrico, 42 Va. App. 495, 507, 592 S.E.2d 768, 774 (2004) (*en banc*) (citation omitted). "To doubt is to affirm." Laurels of Bon Air v. Med. Facilities, 51 Va. App. 583, 597-98, 659 S.E.2d 561, 569 (2008) (citation omitted). Given the absence of any persuasive showing of a common law antecedent to Code § 37.2-1101, we hold the circuit court did not violate Article I, § 11 of the Virginia Constitution by refusing to impanel a jury to decide Ingram's case.

(ii) STATUTORY RIGHT TO A JURY — PLEA IN EQUITY

Ingram next turns to Code § 8.01-336(D), claiming the statute entitled him to have a jury decide the narrow issue of whether the evidence proved by a preponderance that the recommended treatment was contrary to his "religious beliefs or basic values or to specific preferences stated by the person before becoming incapable of making an informed decision," as described in Code § 37.2-1101(G)(4). Titled "Trial by jury of plea in equity," subsection D of Code § 8.01-336 provides: "In any action in which a plea has been filed to an equitable claim, and the allegations of such plea are denied by the plaintiff, either party may have the issue tried by jury."[9]

Though we question whether an involuntary treatment petition under Code § 37.2-1101 is truly an "equitable claim" under Code § 8.01-336, we need not reach that issue because we find

---

[9] When applicable, this provision (unlike an issue out of chancery under Code § 8.01-336(E)) mandates the use of a jury to decide the plea filed in an equity case. See Stanardsville Volunteer Fire Co., 229 Va. at 586-87, 331 S.E.2d at 471-72.

- 10 -

the plea-in-equity procedure inapplicable to this case. A plea in equity is a discrete form of defensive pleading that does not directly address the merits of a complaint. Instead, the plea raises "a single state of facts or circumstances (usually not disclosed or disclosed only in part by the record) which, if proven, constitutes an absolute defense to the claim." Nelms v. Nelms, 236 Va. 281, 289, 374 S.E.2d 4, 9 (1988); Bolling v. Gen. Motors Acceptance Corp., 204 Va. 4, 8, 129 S.E.2d 54, 56 (1963).

> Familiar illustrations of the use of a plea would be: The statute of limitations; absence of proper parties (where this does not appear from the bill itself); *res judicata*; usury; a release; an award; infancy; bankruptcy; denial of partnership; *bona fide* purchaser; denial of an essential jurisdictional fact alleged in the bill, etc.

Nelms, 236 Va. at 289, 374 S.E.2d at 9 (quoting E. Meade, Lile's Equity Pleading and Practice § 199, at 114 (3d ed. 1952) (footnote omitted)).[10]

Ingram rightly acknowledges his burden of proving that the treatment contradicted his "religious beliefs or basic values or . . . specific preferences stated by [him] before becoming incapable of making an informed decision." Code § 37.2-1101(G)(4).[11] But, even if he could have proven this assertion, a separate burden would have then fallen upon the Commonwealth to

---

[10] In the circuit court, Ingram filed a motion titled "Alternative Demand for Jury Trial Upon Plea in Equity." App. at 27. We assume for the sake of argument that, by doing so, Ingram properly preserved this issue for appeal. Cf. Nelms, 236 Va. at 289, 374 S.E.2d at 9 ("The pleadings filed by [appellants], were not, in form, pleas as contemplated by § 8-213 [the statutory predecessor of Code § 8.01-336(D)]." (quoting Bolling, 204 Va. at 7, 129 S.E.2d at 56); Bryson, *supra*, at 273 (correctly noting that "the pleading must be a plea both in form and in substance" (footnote omitted)).

[11] As a general rule, "the proponent of an issue bears the burden of persuasion on the factual premises for applying the rule." Dixon v. United States, 548 U.S. 1, 8 (2006) (quoting George P. Fletcher, Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices in Criminal Cases, 77 Yale L.J. 880, 898 (1967-68)). This premise rests on the ancient axiom that the burden of the proof "is incumbent upon the party who affirms a fact, not upon him who denies it." Digest of Justinian, Dig. 22.3.2, translated in 5 Samuel P. Scott, The Civil Law 224 (1932).

show that the treatment was nonetheless "necessary to prevent death or a serious irreversible condition." Id. Invoking the statutory exception to involuntary treatment, therefore, involves mixed questions with shifting burdens of proof — a situation very different from the traditional plea in equity raising "a single state of facts or circumstances . . . which, if proven, constitutes an absolute defense to the claim." Nelms, 236 Va. at 289, 374 S.E.2d at 9.

We thus conclude the plea-in-equity procedure recognized by Code § 8.01-336(D) did not require the circuit court to impanel a jury to decide whether Ingram's religious beliefs, basic values, or specific preferences precluded the entry of a treatment order under Code § 37.2-1101(G)(4).

III.

Because the expiration of the 180-day order mooted Ingram's challenge to the sufficiency of the evidence supporting the order, we offer no opinion on the subject. Ingram's jury trial demand survives the expiration of the order and, on that issue, we hold the circuit court did not err in denying Ingram's request for a jury trial.

Dismissed in part as moot, affirmed in part.

- 12 -