PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference


VIRGINIA MANUFACTURERS ASSOCIATION,
  JON TIGGES, ZION SPRINGS, LLC,
  GRACE CHURCH OF FREDERICKSBURG,
  JOSH TIGGES, DAVE LaROCK,
  ANNE WAYNETTE ANDERSON,
  SPONSOR HOUNDS, LLC,
  RIVER ROCK ENTERTAINMENT, INC., LINDA PARK,
  FUJIYA HOUSE, INC., HEIDI BUNDY (INDIVIDUALLY
  AND ON BEHALF OF "A LITTLE BIT HAPPY"),
  JEFFREY FREDERICK AND BREW REPUBLIC BIERWORKS
                                                            OPINION BY
v.        Record No. 0316-21-2              JUDGE MARY GRACE O'BRIEN
                                                       DECEMBER 7, 2021
RALPH S. NORTHAM, GOVERNOR OF VIRGINIA,
  M. NORMAN OLIVER, STATE HEALTH COMMISSIONER,
  C. RAY DAVENPORT, STATE COMMISSIONER OF LABOR
  AND INDUSTRY AND VIRGINIA SAFETY AND HEALTH
  CODES BOARD, C/O CHARLES L. STIFF, CHAIR


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          W. Reilly Marchant, Judge

          Nandan Kenkeremath (Matthew D. Hardin; Joseph J. Traficanti;
          Celsius GC, PLC, on briefs), for appellants.

          Jerald R. Hess, Assistant Attorney General (Mark R. Herring,
          Attorney General; Donald D. Anderson, Deputy Attorney General;
          David C. Grandis, Senior Assistant Attorney General/Section Chief,
          on brief), for appellees.


        The Virginia Manufacturers Association and other parties (collectively, "appellants") appeal

a circuit court order dismissing their complaint challenging executive actions taken in response to

the COVID-19 pandemic:  Executive Order ("EO") 63, which required patrons to wear face

coverings inside buildings; EO 67, which placed Virginia in "Phase Three" of its reopening plan;

and the Virginia Safety and Health Codes Board's Emergency Temporary Standard ("ETS"), which

provided certain workplace requirements designed to prevent the spread of disease to and among employees and employers. The EOs received separate numbers as Orders of Public Health Emergency ("OPHE") and were signed by Governor Ralph Northam and Health Commissioner M. Norman Oliver. EO 63 is also numbered as OPHE 5, and EO 67 is also numbered as OPHE 7.

Appellants challenged the EOs and ETS in a four-count complaint against Governor Northam, Health Commissioner Oliver, Commissioner of Labor and Industry C. Ray Davenport, and the Virginia Safety and Health Codes Board (collectively, "appellees").

Count I alleged that the EOs and OPHEs violated the Virginia Administrative Process Act ("VAPA"); Count II requested a declaratory order setting aside the ETS; Count III alleged that the EOs, OPHEs, and the ETS imposed restrictions that violated the Virginia Religious Freedom Restoration Act ("VRFRA"); and Count IV alleged that these restrictions violated the separation of powers provisions of the Virginia Constitution and impermissibly infringed on rights of assembly and association and the free exercise of religion.

Appellants assert eight assignments of error on appeal. In the first two, appellants contend the court erred by dismissing Count I and holding that VAPA does not apply to "rules" that are "written into" the EOs. In the third assignment of error, appellants argue the court erred by dismissing the request for declaratory relief in Count II and holding that a vote by the Virginia Safety and Health Codes Board regarding the need for the ETS "satisfied all applicable legal standards and precluded judicial review." The fourth assignment of error also challenges the court's dismissal of Count II on mootness grounds.

In the fifth assignment of error, appellants contend the court used the wrong standard for reviewing a demurrer and based the dismissal of Count III on an "incorrect interpretation of the threshold statutory standard in VRFRA."

The sixth and seventh assignments of error challenge the court's determination that Count IV failed to state a legally cognizable separation of powers claim as to either the Governor or the Health Commissioner. In the eighth assignment of error, appellants argue the court erred by dismissing Count IV claiming infringement of fundamental rights, "including in the context of religious service," by not properly addressing allegations of infringement nor identifying proper legal standards.

BACKGROUND

On February 7, 2020, Health Commissioner Oliver declared COVID-19 a "Communicable Disease of Public Health Threat for Virginia" as defined in Code § 32.1-48.06.

On March 12, 2020, Governor Northam issued EO 51 stating that the "anticipated effects of COVID-19 constitute a disaster" and declaring a state of emergency pursuant to the Virginia Emergency Services and Disaster Law ("Virginia Emergency Law"), Code §§ 44-146.13 through 44-146.29:3.

The Governor subsequently issued a series of EOs designed to slow the spread of COVID-19 in Virginia. These EOs limited public and private gatherings, restricted restaurant and retail businesses, directed schools to cease in-person instruction, and required most recreational and entertainment businesses to temporarily close. Subsequent EOs began a multi-phase reopening process.

A. EO 63 and EO 67

Appellants primarily challenge EO 63 and EO 67. The EOs, signed by the Governor and co-signed by the Health Commissioner, are prefaced with the following statement of statutory authority:

> Therefore, by virtue of the authority vested in me by Article V of the
> Constitution of Virginia, by § 44-146.17 of the Code of Virginia, by
> any other applicable law, and in furtherance of Amended Executive

Order 51 (2020), and by virtue of the authority vested in the State
Health Commissioner pursuant to §§ 32.1-13, 32.1-20, and 35.1-10
of the Code of Virginia, the following is ordered: . . . .

EO 63, first issued May 26, 2020, required face coverings for all patrons (over age ten) of certain types of businesses, as well as for employees of essential retail businesses whenever working in customer-facing areas. Violations were punishable as Class 1 misdemeanors pursuant to Code § 32.1-27, and the Health Commissioner was also authorized to seek injunctive relief to enforce the EO under Code § 32.1-27.

EO 67, first issued June 30, 2020, moved Virginia to Phase Three of its reopening plan and eased many restrictions from prior EOs. EO 67 imposed certain obligations on businesses, including requirements to space patrons six feet apart and ensure that employees working in customer-facing areas wore "face coverings over their nose and mouth at all times." Businesses that could not comply with the requirements were required to close. EO 67 limited all public and private gatherings to 250 people. EO 67 also restricted "religious services" by requiring non-family members to sit six feet apart and mandating single-serving containers for food and drink.

EO 67 imposed additional restrictions on restaurants, farmers' markets, exercise facilities, and public beaches. EO 67 removed prior maximum-capacity limits for restaurants but still required that tables be spaced six feet apart and "[b]ar seats and congregating areas of restaurants . . . [be closed] except for through-traffic." Violations of EO 67 also were punishable as Class 1 misdemeanors and subject to injunctive relief.

EO 63 and EO 67 were amended at various times during the state of emergency declared by Governor Northam. The state of emergency expired on June 30, 2021, and all EOs imposing COVID-19 restrictions ceased to have any effect.

B.  Emergency Temporary Standard

On July 15, 2020, the Virginia Safety and Health Codes Board ("Board") adopted the ETS pursuant to Code § 40.1-22(6a).[1]  See 16 VAC 25-220-10(C).  The statute authorizes the Board to issue an "emergency temporary standard" lasting no longer than six months, and it specifically exempts the initial adoption of an emergency temporary standard from VAPA.  See Code § 40.1-22(6a) ("The Board shall provide, without regard to the requirements of Chapter 40 ([Code] § 2.2-4000 et seq.) of Title 2.2. [i.e., VAPA], for an emergency temporary standard . . . .").

The ETS took effect on July 27, 2020, and was set to expire "within six months of its effective date, upon expiration of the Governor's State of Emergency, or when superseded by a permanent standard, whichever occurs first."  16 VAC 25-220-20.  See Code § 40.1-22(6a).

The ETS required employers to take one of two actions.  Employers could either undertake certain safety and health precautions based on an assessment of their employees' risk of contracting COVID-19, or employers could follow CDC guidelines.  See 16 VAC 25-220-10(E), (G)(1).  The ETS contained a process for requesting religious waivers from the required use of face coverings. 16 VAC 25-220-40(J).

The ETS expired on January 27, 2021, six months after it went into effect, and was replaced by a permanent standard with similar but not identical provisions.  Before establishing the permanent standard, the Board conducted sixteen hours of public meetings, made available an online public comment forum from December 10, 2020, to January 9, 2021, and considered new scientific briefings.  An economic impact analysis accompanied the permanent standard.  On

---

[1] The ETS was set forth in 16 VAC 25-220-10 through -90.  This administrative code section now contains the revised permanent standard.  Here, unless otherwise noted, references to the ETS are from the prior version of the administrative code, which the Department of Labor and Industry maintains at its website.  See https://www.doli.virginia.gov/wp-content/uploads/2020/07/RIS-filed-RTD-Final-ETS-7.24.2020.pdf (last visited Dec. 2, 2021).

September 8, 2021, a revised permanent standard took effect following another period for public notice and comment, another economic impact analysis, and review by the Governor.

The revised permanent standard addresses vaccines and updated CDC guidelines, and accordingly it modifies requirements for employers.  See, e.g., 16 VAC 25-220-40 (effective Sept. 8, 2021).  It contains new definitions of physical distancing, minimal occupational contact, and symptoms of COVID-19.  See 16 VAC 25-220-30 (effective Sept. 8, 2021).  Further, employers are no longer subject to enforcement actions for failing to provide personal protective equipment when they are making good-faith efforts to procure these supplies.  See 16 VAC 25-220-10(C) (effective Sept. 8, 2021).  In short, the revised permanent standard differs substantially from the ETS.

C.  Pleadings

Appellants filed their initial complaint September 16, 2020.  By agreed order, a first amended complaint adding three plaintiffs was filed on October 26, 2020.

Appellants asserted four counts against appellees.  Count I sought judicial review of the EOs pursuant to Code § 2.2-4026 of VAPA.  Count II requested a declaratory order setting aside the ETS based on allegations of both procedural and substantive deficiencies.  Count III alleged that the restrictions on assembly and association violated VRFRA by substantially burdening the free exercise of religion.  Count IV alleged that the EOs and ETS violated the separation of powers provision of the state constitution and infringed on rights of assembly, association, and religious exercise.

Appellees moved to dismiss on three grounds.  First, they contended that appellants lacked standing regarding all four counts; second, they sought dismissal of Count I on the grounds that VAPA did not apply; third, they argued that the request for declaratory relief under Count II was legally deficient.  At the hearing, the court took appellees' motion to dismiss under advisement and granted appellants leave to amend "but only as to factual allegations that relate to standing."

Appellants' second amended complaint "incorporate[d] by reference" the first amended complaint and added new factual allegations attempting to demonstrate how each party had been adversely affected by the executive actions. The second amended complaint also added allegations describing executive actions that had occurred after the filing of the first amended complaint in October 2020, stating that "[t]he facts relevant to standing, and some other matters, continue to change." Appellants added that the Governor and Health Commissioner had signed further EOs that were "progeny" of those EOs referenced in the earlier pleading. Specifically, appellants added references to amended versions of EO 63 and 67, as well as references to an entirely new executive order, EO 72, issued on December 14, 2020.

Appellees moved to strike the second amended complaint, arguing that it violated Rule 1:4(d)'s requirement to clearly state a party's claims. Further, they contended that appellants violated the court's instruction to amend only the factual allegations related to standing and the complaint now sought to "retroactively establish standing by alleging new injuries." Appellees also renewed their motion to dismiss on the same grounds stated in their prior motion.

### D. The Court's Ruling

The court ruled that appellants had sufficiently alleged direct injury and therefore had standing to sue. The court also denied the motion to strike based on Rule 1:4(d), although it found the second amended complaint "somewhat confusing and extremely long and somewhat intertwining."

However, the court dismissed Count I because "VAPA doesn't apply to executive orders." It dismissed Count II as moot because the ETS had expired in January 2021 and appellants failed to state a claim that the ETS did not meet the requirements of Code § 40.1-22. The court dismissed Count III for failing to sufficiently allege a "substantial burden" on the free exercise of religion, as required by VRFRA, Code § 57-2.02(B). Finally, the court dismissed Count IV because appellees

acted pursuant to explicit statutory authority, and because any curtailment of appellants' freedom of assembly had a "real or substantial relation" to the COVID-19 public health crisis and did not rise to the level of a "plain, palpable invasion of rights secured by the fundamental law," quoting Jacobson v. Massachusetts, 197 U.S. 11, 31 (1905).

## ANALYSIS

### A.  Standard of Review

"Where, as here, 'no evidence [has been] taken with regard to [a] motion to dismiss[,] we treat the factual allegations . . . as we do on review of a demurrer.'" Bragg v. Bd. of Supervisors, 295 Va. 416, 423 (2018) (alterations in original) (quoting Va. Marine Res. Comm'n v. Clark, 281 Va. 679, 686-87 (2011), overruled in part on other grounds by Woolford v. Va. Dep't of Tax'n, 294 Va. 377, 390 n.4 (2017)).  We accept "the truth of all material facts that are . . . expressly alleged, impliedly alleged, and which can be inferred from the facts alleged." Harris v. Kreutzer, 271 Va. 188, 195-96 (2006).  This "inquiry encompasses 'not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading.'" Bragg, 295 Va. at 423 (quoting Flippo v. F & L Land Co., 241 Va. 15, 17 (1991)).

Accordingly, in reviewing the court's decision, we look solely to the allegations in the pleading and accompanying affidavits.  See id.  Additionally, because the sufficiency of appellants' pleading presents "pure questions of law, we do not accord a presumption of correctness to the judgment below, but review the issues *de novo*." Philip Morris USA Inc. v. Chesapeake Bay Found., Inc., 273 Va. 564, 572 (2007); see also Bragg, 295 Va. at 423 ("We . . . review the circuit court's decision to dismiss the petition, and any corresponding issues of statutory interpretation, *de novo*.").

- 8 -

B. Assignments of Error 1 and 2: Judicial Review under VAPA

Appellants' first two assignments of error challenge the court's dismissal of Count I of the second amended complaint that alleged that EO 63 (also numbered as OPHE 5) and EO 67 (also numbered as OPHE 7) were issued in violation of VAPA. They argue that the court erred in determining that VAPA does not apply to the rules articulated in the EOs that were also issued as OPHEs.

The Governor issued EO 63 and EO 67 pursuant to Code § 44-146.17, a statute within the Virginia Emergency Law. According to its express legislative purpose, the Virginia Emergency Law reflects the General Assembly's intent "[t]o confer upon the Governor . . . emergency powers provided herein." Code § 44-146.14(a)(2). Code § 44-146.17 is cited in the EOs and provides in relevant part as follows:

> The Governor shall be Director of Emergency Management. He shall take such action from time to time as is necessary for the adequate promotion and coordination of state and local emergency services relating to the safety and welfare of the Commonwealth in time of disasters.
>
> The Governor shall have, in addition to his powers hereinafter or elsewhere prescribed by law, the following powers and duties:
>
> (1) To proclaim and publish such rules and regulations and to issue such orders as may, *in his judgment*, be necessary to accomplish the purposes of this chapter . . . .
>
> *Executive orders*, to include those *declaring a state of emergency* and directing evacuation, shall have the *force and effect of law* and the violation thereof shall be punishable as a Class 1 misdemeanor in every case where the executive order declares that its violation shall have such force and effect. . . .
>
> (7) Whenever, in the opinion of the Governor, the safety and welfare of the people of the Commonwealth require the exercise of emergency measures due to a threatened or actual disaster, to declare a state of emergency to exist . . . .

Code § 44-146.17(1), (7) (emphasis added).

Therefore, the General Assembly expressly authorized the Governor to declare a state of emergency and conferred upon the Governor the broad authority to issue rules, regulations, and executive orders that "in his judgment" are necessary to protect public health and safety in an emergency. See id.; see also Boyd v. Commonwealth, 216 Va. 16, 18-19 (1975). In Boyd, the Supreme Court upheld an executive order declaring an emergency due to an "acute fuel shortage" and imposing a speed limit of fifty-five miles per hour on all state highways. 216 Va. at 16-17. In affirming the defendant's speeding conviction, the Supreme Court rejected his argument that the fuel shortage "was not such a 'disaster' as contemplated by the [Virginia Emergency Law]." Id. at 19; see Code § 44-146.16 (defining "disaster"). Instead, the Supreme Court determined that the governor acted within the broad authority conferred by the legislature. Id. at 19-20. Construing the language of a prior but substantively similar version of the Virginia Emergency Law, the Supreme Court was "convince[d] . . . that the Governor acted within the limits of the authority delegated to him." Id. at 19. "It is elementary that the health, safety[,] and welfare of the people of this Commonwealth depend upon an adequate supply of motor vehicle fuel. . . . Prompt action was required." Id.

Here, on February 7, 2020, the Health Commissioner identified COVID-19 as a public health threat. The Governor then issued EO 51 stating that the anticipated effects of COVID-19 constituted a disaster and declaring a state of emergency. Subsequent EOs, including EO 63 and EO 67, initiated a response plan and reflected the Governor's judgment concerning the actions necessary to accomplish the purposes of the Virginia Emergency Law.

Code § 44-146.17(1) grants the Governor broad emergency powers and commits the exercise of those powers to the Governor's "judgment," reflecting a legislative determination that the Governor must be able to respond immediately and effectively to emergency situations. It would be inconsistent for this broad authority to be limited by the procedural requirements of

- 10 -

VAPA for notice and public comment. See, e.g., Code § 2.2-4007.01(A) (requiring at least thirty days for public comment after notice of intended regulatory action by a state agency). Further, compliance with VAPA's procedural requirements would forestall implementation of emergency rules designed to prevent the spread of disease and would thwart the purpose of the Virginia Emergency Law, to empower the Governor to take swift action to protect public health and safety. See Code § 44-146.14(a)(2).

Additionally, actions taken pursuant to the Virginia Emergency Law are required to be temporary and must be accompanied by notice to the legislature. See Code § 44-146.17(1) (providing that "no rule, regulation, or order issued under this section shall have any effect beyond June 30 next following the next adjournment of the regular session of the General Assembly"); Code § 44-146.17:1 (requiring the Governor to "cause copies of any order . . . proclaimed and published by him pursuant to Code § 44-146.17 to be transmitted forthwith to each member of the General Assembly"). These requirements ensure that the General Assembly is formally advised of the Governor's actions during an emergency and the resulting concentration of authority in the Governor cannot last indefinitely. These parameters on the Governor's emergency authority indicate that the General Assembly recognized the unique nature of emergency orders and designed a specific set of procedural safeguards to address the risks they present. Those safeguards operate in lieu of the measures VAPA imposes on agency action generally. See Wal-Mart Stores E., LP v. State Corp. Comm'n, 299 Va. 57, 70 (2020) (stating that courts "'presume that the legislature chose, with care, the' specific words of the statute" and that "[t]he act of choosing carefully some words necessarily implies others are omitted with equal care" (alteration in original) (quoting Rickman v. Commonwealth, 294 Va. 531, 540 n.3 (2017))).[2]

---

[2] We note that the General Assembly amended the Virginia Emergency Law after the Governor declared a state of emergency and began issuing EOs to address the COVID-19

- 11 -

Appellants contend that the EOs are subject to judicial review under VAPA because VAPA provides for emergency rulemaking in Code § 2.2-4011. We disagree. Code § 2.2-4011 is a general statute allowing state agencies to adopt emergency regulations after consultation with the Attorney General and only with approval "at the sole discretion of the Governor." Code § 2.2-4011(A). Here, even assuming the Governor himself could issue emergency rules pursuant to Code § 2.2-4011, the Virginia Emergency Law confers authority to issue emergency EOs "in addition to [the Governor's] powers . . . elsewhere prescribed by law." Code § 44-146.17(1). Further, when "one statute speaks to a subject generally and another deals with an element of that subject specifically, the more specific statute is controlling." Conger v. Barrett, 280 Va. 627, 631 (2010) (quoting Viking Enter., Inc. v. County of Chesterfield, 277 Va. 104, 110 (2009)). Thus, VAPA's general grant of emergency rulemaking authority to administrative agencies does not limit the Governor's separate and specific authority to issue EOs under the Virginia Emergency Law. Nothing in Code § 2.2-4011 subjects the EOs to judicial review under VAPA.

Although the EOs set forth rules for wearing face coverings and maintaining physical distances in public areas, they did not therefore constitute agency regulations subject to VAPA. Nothing required appellants to pursue administrative remedies prior to filing their action in circuit court challenging the EOs, a prerequisite for judicial review under VAPA, and they in fact did not pursue any preliminary administrative remedies. See Foltz v. Dep't of State Police, 55 Va. App. 182, 185-89 (2009) (finding that VAPA did not apply where the complaining party was not first required to pursue administrative remedies prior to filing suit). The EOs were issued pursuant to the

---

pandemic. The amendments relate to enforcement of EO violations by civil penalties and authorize the Governor to establish a program for purchasing and distributing personal protective equipment to private, nongovernmental entities. See 2020 Va. Acts chs. 14, 15, 17, 38. If the General Assembly wanted to impose limitations on the Governor's authority to issue EOs, such as expressly ensure that they comply with VAPA, it could have done so. See Wal-Mart Stores E., LP, 299 Va. at 70.

Governor's delegated authority to take prompt action under the Virginia Emergency Law. Requiring EOs to comply with VAPA would undermine the legislative purpose of the Virginia Emergency Law to confer exigent rulemaking authority upon the Governor.

Appellants also challenge the court's determination that VAPA does not apply to OPHEs. The EOs received OPHE numbers and were co-signed by the Health Commissioner pursuant to Code §§ 32.1-13, 32.1-20, and 35.1-10. Appellants contend that because the Health Commissioner issued the OPHEs pursuant to this statutory authority, he was "acting as an 'agency' as that term is defined under the VAPA" and therefore these orders were subject to VAPA's requirements.

However, the OPHEs are precisely the same documents as the EOs: EO 63 is subtitled as OPHE 5, and EO 67 is subtitled as OPHE 7. VAPA, which does not apply to EOs, does not automatically apply merely because the EOs were co-signed by the Health Commissioner and given separate OPHE numbers.

Emergency executive actions are not immune from judicial review. For example, in separate lawsuits filed in both state and federal court, many appellants sought to enjoin enforcement of the executive actions and received hearings on the merits of their claims. See, e.g., Tigges v. Northam, 473 F. Supp. 3d 559 (E.D. Va. 2020). However, a request for judicial review under VAPA is not the proper mechanism for challenging executive orders issued pursuant to the Virginia Emergency Law.

Therefore, because Count I sought judicial review under VAPA, the court did not err in finding that appellants failed to state a claim and dismissing that count.

### C. Assignments of Error 3 and 4: ETS claims

Count II of the second amended complaint requested a declaratory judgment pursuant to Code § 40.1-22(7) that "the ETS is void." The court dismissed Count II both because the ETS was adopted in compliance with Code § 40.1-22(6a) and because it had already expired, rendering the

issue moot. Because we agree with appellees' contention that the issue was moot, we affirm the court's ruling on that basis.

Although Count II sought a declaration that "the ETS is void," the ETS expired January 27, 2021, and no longer had any effect when the parties appeared in court on appellees' motion to dismiss in February 2021. See Code § 40.1-22(6a) (stating that an emergency temporary standard expires after six months, or when replaced by a permanent standard, or when repealed, whichever comes first). Because the relief appellants were seeking had already occurred, the court dismissed Count II as moot, as an alternative basis to its other grounds for dismissing Count II.

Appellees now claim that their challenge to ETS is not moot because the Board's adoption of a permanent standard was a "form over substance change" and "most" of the ETS "remain[s] substantially 'on the books.'"

However, the permanent standard was both adopted and revised through a separate rulemaking process distinct from the procedure for adopting an ETS. The process for a permanent standard provides for a public notice and comment period, economic impact analysis, and public Board meetings to consider its substance. See, e.g., Code §§ 2.2-4007 to 2.2-4017 (prescribing process for promulgating regulations). The permanent standard is not a mere continuation of the ETS; it is a separate and substantively different regulation that replaced the ETS.

Appellants never challenged the permanent standard in the court below and are precluded from doing so for the first time on appeal. See Rule 5A:18. Appellants could conceivably initiate a new lawsuit seeking judicial review of the permanent standard under Code § 40.1-22(7), which would require the circuit court to consider the record of its adoption. But this Court is precluded from reviewing that record for the first time on appeal. See Rule 5A:18.

"Generally, a case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist." Daily Press, Inc. v. Commonwealth, 285 Va. 447, 452 (2013). "No

- 14 -

matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about [appellants'] particular legal rights.'" Ingram v. Commonwealth, 62 Va. App. 14, 21-22 (2013) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)).

There are limited exceptions to this mootness doctrine. For example, an issue is not moot when a proceeding is "short-lived by nature" or "when the underlying controversy is one capable of repetition, yet evading review." Id. at 22 (first quoting Daily Press, Inc., 285 Va. at 452; and then quoting Va. Dep't State Police v. Elliott, 48 Va. App. 551, 554 (2006)). In Ingram, an institutionalized defendant appealed an order requiring him to undergo psychiatric and mental treatment for 180 days. Id. at 20-21. This Court dismissed the appeal as moot after the 180-day order expired, stating that "[e]ven if a case is alive at the time of filing, 'subsequent events can moot the claim.'" Id. at 22 n.1 (quoting Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013)).

Here, the ETS expired both by its express language and by statute, and therefore the precise relief requested by appellants — to declare the ETS void — is unavailable. Moreover, no exception to the mootness doctrine applies: the six-month duration of the ETS was adequate time for appellants to seek injunctive relief, and appellants' claims are not "capable of repetition" because the ETS has been replaced by a substantively distinct permanent standard pursuant to VAPA's requirements for public notice and comment. See id. There is no "reasonable expectation that the same complaining party [will] be subject to the same action again," a requirement for this mootness exception to apply. See Spencer v. Kemna, 523 U.S. 1, 17 (1998) (alteration in original) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 481 (1990)). Therefore, the court did not err in dismissing Count II as moot.

D.  Assignment of Error 5:  VRFRA claims

Appellants contend the court erred in dismissing Count III, which alleged that the restrictions imposed by EO 63 and EO 67 substantially burdened the free exercise of religion in violation of VRFRA.  VRFRA provides in relevant part as follows:

> No government entity shall substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability unless it demonstrates that application of the burden to the person is (i) essential to further a compelling governmental interest and (ii) the least restrictive means of furthering that compelling governmental interest.

Code § 57-2.02(B).  The statute allows an aggrieved party to sue for declaratory or injunctive relief, Code § 57-2.02(D), and "[t]he decision . . . may be appealed by petition to the Court of Appeals of Virginia," Code § 57-2.02(F).

In Count III, certain appellants alleged that the EOs impermissibly limited their religious practices.  For example, they alleged that limitations on public gatherings and seating arrangements interfered with church attendance, created difficulties in ministering to families, and hampered weddings and funerals.

However, the state of emergency expired on June 30, 2021, and all EOs imposing COVID-19 restrictions terminated.  Nevertheless, citing Commonwealth ex rel. State Water Control Board v. Appalachian Power Co., 12 Va. App. 73, 76 (1991) (*en banc*), appellants argue that although the restrictions challenged in Count III have expired, the harm involved falls under the "capable of repetition, but evading review" exception to the mootness doctrine.  See Salvatierra v. City of Falls Church, 35 Va. App. 453, 456-57 (2001) (applying mootness exception when the defendant's commitment to the Department of Juvenile Justice "was too short to fully litigate the issues through an appeal" and the ruling could impact his future probation status).  Cf. Ingram, 62 Va. App. at 21-22.  Further, the exception requires a "reasonable expectation that the same

- 16 -

complaining party [will] be subject to the same action again." Spencer, 523 U.S. at 17 (alteration in original) (quoting Lewis, 494 U.S. at 481).

This exception to the mootness doctrine does not apply here. Count III challenged the substance of the EOs and alleged that they burdened the free exercise of religion. Because the EOs have expired by operation of law and are not currently in effect, we cannot speculate on how or whether the content of future EOs might substantively affect religious rights, if at all. To do so would be to render an impermissible advisory opinion. See Elliott, 48 Va. App. at 554 (noting the Court's "duty 'not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it'" (quoting Hankins v. Town of Virginia Beach, 182 Va. 642, 644 (1944))); see also Ingram, 62 Va. App. at 22 ("'Advisory opinions represent an attenuate exercise of judicial power,' . . . 'one which we traditionally avoid in all but the most extenuating circumstances'" (first quoting Elliott, 48 Va. App. at 553, then quoting Pilson v. Commonwealth, 52 Va. App. 442, 446 (2008))).

Therefore, because the executive actions that appellants claimed violated VRFRA have expired by operation of law, and we cannot speculate on whether appellants will be subject to the same action again, see Spencer, 523 U.S. at 17, we dismiss assignment of error 5 as moot.

E. Assignments of Error 6, 7, and 8: Constitutional claims

Appellants' remaining assignments of error challenge the court's dismissal of Count IV, which alleged that the executive actions violated the separation of powers provisions of the state constitution and infringed on fundamental rights including the freedom of assembly and free exercise of religion. Appellants argue that the court erred in finding no legally cognizable constitutional claims in Count IV. However, our limited jurisdiction does not include the issues raised in assignments of error 6, 7, and 8.

Code § 17.1-405(1)(i) authorizes an aggrieved party to appeal to the Court of Appeals from "[a]ny final decision of a circuit court on appeal from . . . a decision of an administrative agency."[3] For an appeal to lie within this Court's subject matter jurisdiction under this code section, appellants must have been required to "pursue administrative remedies prior to filing a civil action." See Foltz, 55 Va. App. at 189. In Foltz, the plaintiff brought an action in circuit court seeking a declaratory judgment that his prior conviction for assault and battery against his wife did not render him ineligible to purchase a firearm under federal law. Id. at 183. The court sustained the demurrer of the Department of State Police ("DSP"), and the plaintiff appealed to this Court. Id. We ruled that the matter was not an administrative appeal within our subject matter jurisdiction and transferred the appeal to the Supreme Court under Code § 8.01-677.1. Id. at 189-90. The plaintiff was not appealing from a DSP case decision, and a separate statute expressly provided for bringing a "civil action" for "[c]ivil remedies" for violations of the "Criminal Justice Services" chapter of the Code. Id. at 186-88 & n.5. Nothing required the plaintiff to pursue administrative remedies before filing the civil action contesting the adverse decision regarding his eligibility to purchase a firearm. Id. at 189.

Likewise, nothing required appellants to pursue administrative remedies as a precursor to bringing the constitutional claims in Count IV, and they in fact did not pursue any. Therefore, it was not an "appeal" from an administrative agency's decision within the meaning of Code § 17.1-405(1)(i). Rather, Count IV alleged that the executive actions exceeded the scope of authority delegated by the General Assembly and infringed on fundamental rights. Thus, the claims in Count IV do not fall within any category of the Court's limited jurisdiction. See Code § 17.1-405. They are enforceable, if at all, as common law actions. See Gray v. Va. Sec'y of

---

[3] This code section limiting the Court's jurisdiction is effective until January 1, 2022.

Transp., 276 Va. 93, 106 (2008) (stating that "self-executing" constitutional provisions, such as the separation of powers, are "operative without the need for supplemental legislation" and are therefore "enforceable in a common law action").

Accordingly, assignments of error 6, 7, and 8 are not subject to this Court's statutory jurisdiction under Code § 17.1-405, and we transfer this portion of the appeal to the Supreme Court. See Code § 8.01-677.1.

CONCLUSION

We affirm the court's decisions dismissing Count I because VAPA does not apply to emergency executive orders and dismissing Counts II and III as moot. Because this Court does not have jurisdiction to entertain appellants' claims concerning Count IV, we transfer assignments of error 6, 7, and 8 to the Supreme Court of Virginia.

<u>Affirmed in part, transferred in part.</u>