# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 15, 2020

Lyle W. Cayce
Clerk

No. 18-20440

John J. Dierlam,

*Plaintiff—Appellant*,

*versus*

Donald J. Trump, *President of the United States*, *in his official capacity as President of the United States*; United States Department of Health and Human Services; Alex M. Azar, II, *Secretary, U.S. Department of Health and Human Services, in his official capacity as the Secretary of the U.S. Department of Health and Human Services*; United States Department of Treasury; Steven T. Mnuchin, *Secretary, U.S. Department of Treasury, in his official capacity as the Secretary of the U.S. Department of the Treasury*; United States Department of Labor; Eugene Scalia, *Secretary, U.S. Department of Labor, in his official capacity as the Secretary of the U.S. Department of Labor*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-307

Before Clement, Haynes, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

No. 18-20440

The Affordable Care Act, now ten years old, is "the most challenged statute in American history."[1] The ACA's far-reaching scope has sparked more than 2,000 legal challenges, including a smattering of suits filed by individual plaintiffs.[2] Over this decade of litigation, no pro se challenge can likely match the breadth of John J. Dierlam's, which seeks retrospective and prospective relief for myriad alleged violations of the United States Constitution and the Religious Freedom Restoration Act.

But there are jurisdictional issues concerning both the forward- and backward-looking relief Dierlam seeks. So, as explained below, we decline to reach the merits of his claims.

First, as Dierlam's case was progressing, the ACA was evolving. A year after Dierlam filed his lawsuit, Congress passed and President Donald J. Trump signed the Tax Cut and Jobs Act, which reduced the shared-responsibility payment (imposed on individuals who fail to purchase health insurance) to $0.[3] That same year, the Department of Health and Human Services created new exemptions to the contraceptive mandate, including an exemption for individuals like Dierlam.[4] These exemptions were enjoined until the Supreme Court's recent decision in *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*.[5] Given the altered legal landscape, and the potential effects on Dierlam's request for prospective relief, a mootness analysis must precede the merits.

---

[1] Abbe R. Gluck et. al., *The Affordable Care Act's Litigation Decade*, 108 GEO. L.J. 1471, 1472 (2020).

[2] *Id.* at 1521–22.

[3] *See* Pub. L. No. 115-97, § 11081, 131 Stat. 2054, 2092 (Dec. 22, 2017).

[4] 82 Fed. Reg. 47792-01 (Oct. 13, 2017).

[5] 140 S. Ct. 2367 (2020).

No. 18-20440

Second, the parties agree that the district court incorrectly dismissed Dierlam's claim for retrospective relief (a refund of his shared-responsibility payments). The Government argues that, even though Dierlam's refund request is jurisdictionally deficient, he should be allowed to amend his complaint to cure any jurisdictional deficiencies.

Our holding: We vacate the district court's dismissal of Dierlam's claims and remand so that the district court can conduct a mootness analysis in the first instance and allow Dierlam to amend his complaint.

I

To contextualize Dierlam's claims, we start with an explanation of the ACA's serpentine history, emphasizing the ways in which the individual and contraceptive mandates have changed over the course of this lawsuit. Then we discuss the procedural history of Dierlam's claims.

A

In 2010, President Barack Obama signed the ACA into law.[6] As originally enacted, the ACA's individual mandate required an "applicable individual"[7] to maintain "minimum essential coverage" (basic health insurance).[8] If an individual failed to comply, and didn't receive an exemption, he had to make a "shared responsibility payment" (pay a penalty) to the IRS.[9]

---

[6] *See* Pub. L. No. 111-148, 124 Stat. 119 (Mar. 23, 2010).

[7] 26 U.S.C. § 5000A(d)(2)(A), (B).

[8] *See id.* § 5000A(f)(1).

[9] *See id.* § 5000A(b); *NFIB v. Sebelius*, 567 U.S. 519, 570 (2012) (holding that Congress "had the power to impose the exaction in § 5000A under the taxing power").

In 2017, Congress passed and President Trump signed into law the TCJA, which eliminated the shared-responsibility payment for noncompliance with the individual mandate.[10] But the TCJA did not alter the existence of the individual mandate—under the statute, an "applicable individual" must still "maintain minimum essential coverage."[11]

The changes to the contraceptive mandate are more complex, involving "six years of protracted litigation."[12] The ACA requires health-insurance providers to cover certain preventive services without "any cost sharing requirements."[13] For women, coverage must include "preventive care and screenings . . . as provided for in comprehensive guidelines supported by" HHS.[14] The statute says nothing more, and it doesn't mention contraceptives. Under the statute's direction, though, HHS issued guidelines requiring coverage of all FDA-approved contraceptives for plan years beginning on or after August 1, 2012.[15] The guidelines provided an exemption for religious employers, such as churches, and an accommodation for religious nonprofits.[16]

After several changes in the exemption and accommodation process, HHS and the Departments of Labor and the Treasury promulgated two interim final rules in 2017. "The first IFR significantly broadened the

---

[10] *See* Pub. L. No. 115-97, § 11081, 131 Stat. 2054, 2092 (Dec. 22, 2017).

[11] 26 U.S.C. § 5000A(a).

[12] *Little Sisters of the Poor*, 140 S. Ct. at 2373.

[13] 42 U.S.C. § 300gg-13(a).

[14] *Id.* § 300gg-13(a)(4).

[15] *See* 77 Fed. Reg. 8725, 8725 (Feb. 15, 2012); 76 Fed. Reg. 46,621, 46,623 (Aug. 3, 2011).

[16] *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 698–99 (2014).

definition of an exempt religious employer."[17] And "[t]he second IFR created a similar 'moral exemption' for employers."[18] Part of the second IFR also included an "individual exemption," which allows "a willing plan sponsor" or "willing health insurance issuer" to offer a separate policy to individuals who object to some or all contraceptive services.[19] The individual exemption is completely dependent on an insurer's willingness to provide a one-off plan that doesn't cover contraceptives.[20] It "cannot be used to force a plan (or its sponsor) or an issuer to provide coverage omitting contraception."[21]

When the Departments finalized the new exemptions, a district court enjoined them, and the Third Circuit affirmed the injunction.[22] The Supreme Court recently reversed that decision in *Little Sisters of the Poor* and remanded the case with instructions to dissolve the nationwide injunction.[23]

With this background in mind, we turn to the case before us.

B

Dierlam is a devout Roman Catholic who opposes the use, funding, provision, and support of contraceptives. He believes that life begins at

---

[17] *Little Sisters of the Poor*, 140 S. Ct. at 2377.

[18] *Id.* at 2378.

[19] 82 Fed. Reg. at 47,812.

[20] *Id.*

[21] *Id.*

[22] 83 Fed. Reg. 57,536, 57,536 (Nov. 15, 2018) (final religious exemption); 83 Fed. Reg. 57,592 (Nov. 15, 2018) (final moral exemption); *Pennsylvania v. President of the United States*, 930 F.3d 543, 556 (3d Cir. 2019).

[23] *Little Sisters of the Poor*, 140 S. Ct. at 2373 (holding that the ACA authorized HHS to exempt or accommodate employers' religious or moral objections to providing no-cost contraceptive coverage).

conception, and that "supporting [the practice of abortion, contraception, and sterilization] even indirectly" contradicts the teachings of the Catholic Church.

In 2012, Dierlam was enrolled in his employer-provided health-insurance plan. But after learning about ACA-mandated changes to the plan's coverage of contraceptives and "abortion services," he dropped his insurance to avoid "support[ing] these services through payment of premiums and fees." Dierlam then tried and failed to find alternative insurance plans consistent with his faith. So Dierlam went without insurance, paid the shared-responsibility payment in 2014 and 2015, and altered his diet to minimize the need for healthcare services.

In 2016, Dierlam sued the Government pro se, bringing numerous and novel statutory and constitutional claims.[24] Dierlam seeks both retrospective relief (a refund of his shared-responsibility payments) and prospective relief (an injunction of the mandates, a declaration that the mandates are unconstitutional, and a simpler exemption process).

The Government filed a 12(b)(6) motion to dismiss Dierlam's claims. Focusing almost exclusively on the RFRA claims, the magistrate judge recommended granting the Government's motion in its entirety. At the hearing on objections to the magistrate judge's report, the court dismissed with prejudice all of Dierlam's claims. Dierlam timely appealed.

---

[24] Dierlam argues that the individual and contraceptive mandates violate RFRA. Dierlam also brings a claim under § 1502(c) of the ACA for failure to notify him of insurance exchanges available through the state. Finally, Dierlam raises numerous constitutional claims, arguing that the individual and contraceptive mandates violate the Establishment, Free Exercise, and Freedom of Association clauses of the First Amendment, the Due Process clause of the Fifth Amendment, and the Fourth and Ninth Amendments.

No. 18-20440

## II

We review Rule 12(b)(6) dismissals de novo.[25] But given the ACA's recent and relevant changes, we must scrutinize our jurisdiction before we scrutinize the district court's judgment. We review jurisdictional questions de novo.[26]

We first address our jurisdiction over Dierlam's request for prospective relief then briefly turn to retrospective relief.

## A

Dierlam seeks various types of prospective relief—an injunction of the individual and contraceptive mandates, a declaration that the mandates are unconstitutional, and a simpler and expanded exemption process from the mandates. But under the TCJA, there is no longer a shared-responsibility payment for failing to maintain health insurance.[27] And the new HHS rules provide an exemption for individuals, like Dierlam, with moral objections to contraceptives. So we must ask whether these changes provided Dierlam with all of the prospective relief he seeks.[28] In other words, did these intervening changes moot Dierlam's claims?

The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live "case" or "controversy."[29] "Accordingly, to invoke the jurisdiction of

---

[25] *Moon v. City of El Paso*, 906 F.3d 352, 357 (5th Cir. 2018).

[26] *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004).

[27] *See* Pub. L. No. 115-97, § 11081, 131 Stat. 2054, 2092 (Dec. 22, 2017).

[28] *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) ("[I]f the facts suggest mootness," then "a federal court is obligated to raise the issue.").

[29] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."[30] This case-or-controversy requirement persists "through all stages of federal judicial proceedings."[31]

If an intervening event renders the court unable to grant the litigant "any effectual relief whatever," the case is moot.[32] But even when the "primary relief sought is no longer available," "being able to imagine an alternative form of relief is all that's required to keep a case alive."[33] So "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."[34]

Further, a case is not necessarily moot because it's uncertain whether the court's relief will have any practical impact on the plaintiff. "Courts often adjudicate disputes where the practical impact of any decision is not assured."[35] For example, "the fact that a defendant is insolvent does not moot a claim for damages."[36] And "[c]ourts also decide cases against foreign nations, whose choices to respect final rulings are not guaranteed."[37]

---

[30] *Chafin v. Chafin*, 568 U.S. 165, 171–72 (2013) (cleaned up).

[31] *Id.* at 172.

[32] *Calderon v. Moore*, 518 U.S. 149, 150 (1996).

[33] *Univ. of Notre Dame v. Sebelius*, 743 F.3d 547, 553 (7th Cir. 2014), *judgment vacated sub nom. Univ. of Notre Dame v. Burwell*, 575 U.S. 901 (2015).

[34] *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307–08 (2012).

[35] *Chafin*, 568 U.S. at 175.

[36] *Id.* at 175–76.

[37] *Id.* at 176.

When conducting a mootness analysis, a court must not "confuse[] mootness with the merits."[38] This means that a court analyzing mootness in the early stages of litigation need only ask whether the plaintiff's requested relief is "so implausible that it may be disregarded on the question of jurisdiction."[39] "[I]t is thus for lower courts at later stages of the litigation to decide whether [the plaintiff] is in fact entitled to the relief he seeks."[40]

Ordinarily, when a case "has become moot on appeal," the court should "vacate the judgment with directions to dismiss."[41] But "in instances where the mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously," we "vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully."[42]

Both the magistrate judge and district court addressed mootness, but only in part. The magistrate judge found that the latest HHS exemption to the contraceptive mandate mooted all of Dierlam's claims for prospective relief. The magistrate judge first stated that the exemption applied to Dierlam, and thus "[t]he sole issue is whether [Dierlam] can obtain" healthcare coverage under the exemption. Taking judicial notice, sua sponte, of a "Catholic

---

[38] *Id.* at 174.

[39] *Id.* at 177.

[40] *Id.*

[41] *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 140 S. Ct. 1525, 1526 (2020) (citation omitted); *see also Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412 (1972) (remanding case to allow amendment of the pleadings after new statute altered terms of real estate tax exemption at issue).

[42] *N.Y. State Rifle & Pistol Ass'n*, 140 S. Ct. at 1526 (citation omitted).

health care sharing ministry" she found online, the magistrate judge concluded that Dierlam could "join the Catholic sharing ministry without violating his beliefs." Finally, the magistrate judge found that the new HHS exemption would cause "the health care marketplace" to "adapt . . . to provide insurance plans that do not cover contraceptive services." At the time of the magistrate judge's report, the HHS exemption was not a final rule.

During the district court's hearing on the magistrate judge's report, the Government said it was no longer pursuing a mootness argument concerning the exemption (still in an interim state). But it maintained that Dierlam's ability to find alternative insurance plans mooted his claims. The district court then raised the TCJA, which became law after the magistrate judge issued her report but before the hearing. The Government said the new statute mooted only claims based on the individual mandate's shared-responsibility payment. From the bench, the district court held that the TCJA mooted Dierlam's claims for prospective relief concerning the individual mandate. And then it dismissed the remainder of Dierlam's claims with prejudice.

On appeal, the Government continues to argue that the TCJA moots only Dierlam's claims for prospective relief from the individual mandate. It only mentions the HHS exemption in a footnote, noting that the exemption was enjoined at the time. Dierlam argues that neither the TCJA nor the latest HHS exemption moot his claims. He asserts that, even though the TCJA reduced the shared-responsibility payment to $0, the mandate remains. And he asserts that the new exemption is "worthless." After the parties completed their briefing, the Supreme Court dissolved the nationwide injunction of the relevant HHS exemption to the contraceptive mandate.[43]

---

[43] *Little Sisters of the Poor*, 140 S. Ct. at 2373.

In sum, the mootness arguments below and on appeal were made piecemeal because of the way the ACA was changing in real time. And the magistrate judge's and district court's partial mootness analyses were problematic. Thus, the mootness analyses so far have been incomplete and incorrect.

First, it's unclear what effect the district court thought the TCJA had on the mootness of Dierlam's claims. At the hearing, the district court only said: "I think, prospectively, it seems to me that most recent legislation does take care of the problem."

Second, the magistrate judge's conclusion about the insufficiency of Dierlam's search for alternative health-insurance plans, including taking sua sponte judicial notice of a Catholic healthcare-sharing ministry, is irrelevant to the mootness determination. Dierlam says the sharing ministry is not a viable option for him. And he says that the magistrate judge's conclusion about his search for insurance "is factually incorrect." It is inappropriate to resolve these types of factual disputes at the pleadings stage to determine mootness. These are merits issues, not mootness issues.

With the relevant legal standards explained above, we vacate and remand for the district court to conduct a thorough mootness analysis in the first instance. If necessary, the district court should allow the parties to amend their pleadings to address the intervening changes to the individual and contraceptive mandates.

B

We also vacate and remand Dierlam's claim for retrospective relief in which he seeks a refund of his 2014 and 2015 shared-responsibility payments. The parties agree that the district court incorrectly dismissed Dierlam's claim with prejudice, and the Government argues that Dierlam is entitled to amend his complaint to cure any jurisdictional deficiencies. Given the

No. 18-20440

circumstances of this case, Dierlam should be allowed to amend his complaint. [44]

### III

For the reasons explained above, we VACATE the district court's dismissal of Dierlam's claims and REMAND for further proceedings consistent with this opinion and any ensuing precedents. If a party to this case later files a notice of appeal, the appeal should be assigned to the same panel. [45]

---

[44] While a court can dismiss a deficient pleading, it should provide "*at least* one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that . . . the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (emphasis added). For pro se plaintiffs, 12(b)(6) dismissals "are disfavored, [and] a court should grant a pro se party every reasonable opportunity to amend." *Hale v. King*, 642 F.3d 492, 503 n.36 (5th Cir. 2011).

Also, the Government states that Dierlam is seeking a refund for 2016. But Dierlam's complaint only refers to payments made in 2014 and 2015. Even so, the Government is correct that Dierlam requested his 2015 refund in April 2016 and filed his amended complaint only three months later, which was too soon. The relevant statute, 26 U.S.C. § 6532, states that a taxpayer seeking a refund cannot file a lawsuit until at least six months after filing a refund claim with the IRS.

[45] *See Constructora Subacuatica Diavaz, S.A. v. M/V Hiryu*, 718 F.2d 690, 693 (5th Cir. 1983).