# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 21, 2022

Lyle W. Cayce
Clerk

No. 21-10116

BlueStar Cabinets, Incorporated,

*Plaintiff—Appellant*,

*versus*

Ur M. Jaddou, *Director of U.S. Citizenship and Immigration Services*;
Donna Campagnolo, *Director of California Service Center*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-840

Before Richman, *Chief Judge*, and Clement and Duncan, *Circuit Judges*.

Per Curiam:[*]

BlueStar Cabinets (BlueStar) appeals an order of the district court granting summary judgment in favor of the United States Citizenship and Immigration Services (USCIS). The district court found that USCIS was

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10116

not arbitrary or capricious in denying BlueStar's L-1A visa petition for its CEO, Jigneshkumar Lodaliya. Because USCIS's findings were supported by the evidence in the record, and the agency articulated a rational basis for its decision, we affirm.

## I

The Immigration and Nationality Act (INA) provides for entry into the United States for classes of nonimmigrants who seek to live and work in the country temporarily.[1] One such means of entry is the L-1 visa. The L-1 visa allows foreign companies to transfer certain employees to their U.S. offices or to offices of their U.S.-based affiliates for up to seven years.[2] Congress established the L-1 visa to "facilitate the temporary admission into the United States of executive, managerial, and specialist personnel of international organizations."[3] There are two varieties of L-1 visa: L-1A and L-1B. L-1A visas are available only to intracompany transferees in managerial or executive roles as defined by the INA.[4] An executive "primarily . . . [d]irects the management of the organization . . . [e]stablishes the goals and policies of the organization . . . [e]xercises wide latitude in discretionary decision-making; and [r]eceives only general supervision or

---

[1] *See* 8 U.S.C. § 1101(a)(15) (excepting certain classes of individuals from the term "immigrant").

[2] 8 U.S.C. § 1101(a)(15)(L); 8 U.S.C. § 1184(c)(2)(D)(i).

[3] *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475-76 (5th Cir. 1989) (citing 116 Cong. Rec. 5730 (1970)).

[4] 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(l)(1)(i); *see Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1066 (9th Cir. 2008) (discussing the subdivision and nomenclature).

No. 21-10116

direction from higher level executives . . . ."[5] L-1B visas, not applicable here, are available to some specialized employees.

Mr. Lodaliya is the CEO of Krishna Textile, an Indian company. BlueStar is a U.S. affiliate of Krishna Textile that as of the time of filing had just incorporated in Texas. Lodaliya is to assume the role of CEO of BlueStar in addition to his role as CEO of Krishna Textile, and BlueStar seeks to have him work in the United States in that role. To authorize Lodaliya's entry into the country, BlueStar filed an I-129 petition with USCIS on behalf of Lodaliya to classify him as a nonimmigrant, intracompany, executive transferee under an L-1A visa.[6]

BlueStar filed its petition with USCIS seeking to classify Lodaliya as an executive transferee in November 2019. In support of the petition, BlueStar submitted an affidavit from Lodaliya describing his role at Krishna Textile and his upcoming role at BlueStar; an organizational chart of Krishna Textile; and a business plan for BlueStar including a planned organizational chart and detailed financial forecasts. BlueStar had incorporated in Texas within the year preceding the filing of its application, and it was considered a "new office" under the INA.[7] As such, it could only seek a visa for Lodaliya for a one-year time period and had to submit additional documentation that it would be able to, among other things, support an executive position within one year of the petition being approved.[8] It sought the visa for December 2019 to December 2020.

---

[5] 8 C.F.R. § 214.2(l)(1)(ii)(C) (defining "executive capacity").

[6] 8 C.F.R. § 214.2(l)(1)(i).

[7] *See* 8 C.F.R. § 214.2(l)(1)(ii)(F) (defining "new office").

[8] *See* 8 C.F.R. § 214.2(l)(3)(v) (listing requirements for new offices and specifying that the maximum approval period is one year).

USCIS responded to BlueStar's petition by issuing a request for evidence (RFE) because it had preliminarily determined that BlueStar's petition was insufficient to establish Lodaliya's eligibility for the visa. USCIS asked BlueStar for more details regarding his employment with Krishna Textile and his upcoming role with BlueStar because it had determined that the documents he had submitted were insufficient to establish that he was working in an executive capacity at Krishna Textile or that BlueStar would be able to support an executive position. USCIS pointed specifically to the facts that (1) almost all of the documents that had been submitted up to that point were self-generated; (2) the documents were not detailed enough to prove that Lodaliya was acting in an executive capacity at Krishna Textile; and (3) the BlueStar documents were not detailed enough to prove that Lodaliya would be acting in an executive capacity once in the United States. BlueStar responded by sending another affidavit from Lodaliya, a letter from counsel, and a letter from a chartered accountant attesting to Lodaliya's ownership of Krishna Textile.

USCIS denied BlueStar's petition on two independent grounds. The agency found that BlueStar had failed to meet its burden to establish that: (1) Lodaliya's position with Krishna Textile was executive or managerial for purposes of the INA; and (2) that BlueStar would be able to support an executive or managerial position within one year.

BlueStar filed suit in the district court seeking judicial review of the agency decision under the Administrative Procedure Act.[9] The parties filed cross-motions for summary judgment, and the district court granted USCIS's motion, finding that USCIS was not arbitrary or capricious in denying the petition because it had "reviewed the submitted evidence and

---

[9] 5 U.S.C. § 702.

No. 21-10116

articulated a rational relationship between the facts and the denial . . . ." BlueStar appealed.

## II

Before reaching the merits of BlueStar's appeal, we must first address mootness and our recent decision in *Ermuraki v. Renaud*.[10]

Mootness is a threshold jurisdictional question that we review *de novo*.[11] Pursuant to Article III of the Constitution, federal courts may only decide live cases and controversies.[12] A case or controversy is live, and a litigant has standing, if the litigant has suffered, or is threatened with, "an actual injury traceable to the defendant and likely to be redressed" by the court.[13] Critically, this "case or controversy" requirement applies at all stages of litigation.[14] If the claim ceases to be a live one during litigation, then the case generally becomes moot and the federal court ceases to have jurisdiction to hear it.[15] Mootness can be often thought of as "the doctrine of standing in a time frame" because generally, "[t]he requisite personal

---

[10] 987 F.3d 384 (5th Cir. 2021) (per curiam).

[11] *E.g.*, *id.* at 386; *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020); *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006).

[12] *See* U.S. CONST. art. III, § 2; *see also Dierlam*, 977 F.3d at 476 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

[13] *Dierlam*, 977 F.3d at 476 (quoting *Chafin v. Chafin*, 568 U.S. 165, 171-72 (2013)).

[14] *Chafin*, 568 U.S. at 172 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).

[15] *See Ermuraki*, 987 F.3d at 386 (discussing how intervening events can moot a case).

interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."[16]

Intervening events can moot a case, but only if those events "render[] the court unable to grant the litigant 'any effectual relief whatever . . . .'"[17] So "long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."[18]

USCIS contends that BlueStar's claim is no longer a live controversy for purposes of Article III because intervening events have rendered the court unable to provide any relief. Specifically, USCIS argues that (1) BlueStar sought the visa for a time period that has now lapsed—December 2019 to December 2020; and (2) the petition was for a "new office," but BlueStar is no longer a "new office" for purposes of the INA.

We begin by noting that this circuit and many others have addressed whether diversity-visa-petition appeals are mooted after the year in which they are sought, but no circuit appears to have addressed whether L-1A visas become moot under similar circumstances.[19] One district court in Florida addressed the question last year, finding that the passage of time did not

---

[16] *Carmouche*, 449 F.3d at 661 (quoting *U. S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)); *but see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170–71 (2000) (explaining shortcomings in this description and noting that "if mootness were simply 'standing set in a time frame,' the exception to mootness that arises when the defendant's allegedly unlawful activity is 'capable of repetition, yet evading review' could not exist.").

[17] *Dierlam*, 977 F.3d at 476 (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam)); *see also, e.g.*, *Ermuraki*, 987 F.3d at 386; *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013).

[18] *Knox v. Serv. Emps. Intern. Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012) (quoting *Ellis v. Ry. Clerks*, 466 U.S. 435, 442 (1984)).

[19] *See, e.g.*, *Ermuraki*, 987 F.3d at 386 (citing cases).

render the L-1A petition for a new office moot, but as of yet there is no circuit opinion on point.[20]

Restated, the question before the court is whether an L-1A, "new office" visa petition becomes moot if litigation is still ongoing past the validity period of the visa originally sought. The answer to that question depends on whether the court can grant the relief requested, i.e., "[a]n order . . . to reopen and approve the I-129 [p]etition." So long as this court can grant *some* effectual relief, no matter how small, the claim is not moot.[21] For the reasons explained below, we hold that this court could effectuate relief. The claim is not moot.

## A

USCIS cites *Ermuraki v. Renaud* in support of its argument that the lapsed time period moots the claim,[22] but *Ermuraki* does not control the outcome of this case. In *Ermuraki*, the plaintiffs challenged the denial of their application to adjust their immigration status under the diversity visa program.[23] The Ermurakis had been randomly selected to apply for a diversity visa in the 2019 fiscal year, but they were ultimately denied.[24] They filed their district court action challenging USCIS's denial after the fiscal

---

[20] *See Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 537 F. Supp. 3d 1323, 1325-27 (S.D. Fla. 2021) (declining to address USCIS's argument that the lapsed time period mooted the petition and rejecting USCIS's argument that the fact the office would no longer be "new" barred relief).

[21] *Cf. Knox*, 567 U.S. at 307-08 (quoting *Ellis v. Ry. Clerks*, 466 U.S. 435, 442 (1984)) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (alteration in original)).

[22] 987 F.3d 384.

[23] *Id.* at 385.

[24] *Id.*

year had ended; the appeal stretched well beyond that.[25] "By law, diversity visas must be *awarded* before midnight on the last day of the fiscal year for which an applicant was selected to apply."[26]  Because the visa was not awarded within the 2019 fiscal year and statutorily could not be awarded *after* the 2019 fiscal year ended, this court vacated the judgment and dismissed the case as moot.[27]  Following the lead of our sister circuits, this court concluded it could provide no relief in the face of the statutory prohibition.[28]

L-1A visas, by contrast, are under no such strict, fiscal-year deadline. L-1A visas may be awarded for a statutory maximum of 7 years.[29]  The regulations do, however, restrict the approval of an initial L-1A visa for up to only 3 years.[30]  It is true that new offices, as USCIS points out, are subject to even stricter guidelines; an L-1A visa for an intracompany transfer to a new U.S. office "may [only] be approved for a period not to exceed one year."[31] But the statute and regulations are silent with regard to whether the agency may approve a petition initially submitted more than one year ago and whether the approved dates of eligibility must match those the petitioner

---

[25] *Id.*

[26] *Id.* (emphasis added) (citing 8 U.S.C. § 1154(a)(1)(l)(ii)(II); 22 C.F.R. § 42.33(f)).

[27] *Id.* at 386-87.

[28] *See id.* ("[M]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff.") (quoting *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013)).

[29] 8 U.S.C. § 1184(c)(2)(D)(i).

[30] 8 C.F.R. § 214.2(l)(7)(i)(A)(2).

[31] 8 C.F.R. § 214.2(l)(7)(i)(A)(3).

requested. The only statutory bar is on the total length of time the initial application may be approved—one year.[32]

This omission is critical. Under what is sometimes called the omitted-case canon of construction, "a statute should not be read to include matter it does not include."[33] Diversity visas may only be approved during the fiscal year in which they are sought—Congress made that clear right in the statute: "Aliens who qualify, through random selection, for a visa under section 1153(c) of this title shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."[34] Additionally, federal regulations mandate time periods of eligibility for other nonimmigrant visas in a way completely absent from the L-1A context. For example, H-1B visas "approved after the date the petitioner indicates . . . shall show a validity period commencing with the date of approval and ending with the date requested by the petitioner," and O-1 visas "shall show the actual dates requested by the petitioner" or "a validity period commencing with the date of approval and ending with the date requested by the petitioner."[35]

USCIS points this court to *Liberty Church of the Assemblies of God v. Blinken* in support of its argument.[36] There, the First Circuit held an appeal

---

[32] *Id.*

[33] *Env't Integrity Project v. EPA*, 969 F.3d 529, 541-42 (5th Cir. 2020) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004)).

[34] 8 U.S.C. § 1154(a)(1)(I)(ii)(II); 22 C.F.R. § 42.33(f).

[35] *Compare* 8 C.F.R. § 214.2(h)(9)(ii)(B), *and* § 214.2(o)(6)(ii)(A), (B), *with* 8 C.F.R. § 214.2(l).

[36] No. 20-1707, 2021 WL 5355640, at *1 (1st Cir. Nov. 10, 2021) (unpublished); *Liberty Church of the Assemblies of God v. Pompeo*, 470 F. Supp. 3d 74, 77 (D. Mass. 2020).

moot because the validity period for an applicant's R-1 visa had lapsed.[37] This case is distinguishable, however. Not only does it involve a different class of visa, but R-1 visas are subject to limitations that resemble those applicable to O-1 visas as described above.[38] Congress took no such action with regard to specifying a time frame during which L-1A new-office petitioners remain eligible for the visa.[39]

Congress' decision to not statutorily limit the period in which an L-1A visa may be approved in the same way it did with diversity visas and other nonimmigrant visas is evidence it did not intend to do so.[40] The statute and regulations governing L-1A visas are unambiguous—there is no bar to granting relief past the dates originally sought in the petition. It is not the place of a court to read such a bar into the statute.

## B

USCIS next argues that at the time BlueStar submitted the petition, it had been in business for less than one year, rendering it a "new office" for purposes of the INA. Because BlueStar petitioned for a new office visa but has now theoretically been in business for more than one year, USCIS contends it is no longer a new office, rendering its petition seeking to transfer Lodaliya moot. It is true that the regulations define "new office" as one having been in business for less than one year, and BlueStar claims to have

---

[37] *Liberty Church*, 2021 WL 5355640, at *1.

[38] *See* 8 C.F.R. § 214.2(r)(5) (noting that an extension of stay under R-1 status "may be granted . . . for the validity period of the petition, up to 30 months . . . .").

[39] *See* 8 U.S.C. § 1101(a)(15)(L) (not specifying a time period of eligibility).

[40] *See Advoc. Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014)) ("When legislators did not adopt 'obvious alternative' language, 'the natural implication is that they did not intend' the alternative.").

No. 21-10116

begun operations in 2019, suggesting that it would no longer be considered a new office for purposes of the INA.[41]  But this is immaterial to the mootness analysis, and because neither the mootness analysis nor the final disposition of this appeal depends on whether BlueStar is currently a "new office," this court expresses no opinion on that question.

L-1A visas are available to employers transferring employees to the United States to open a new office, as well as those transferring employees to an existing office.[42]  The evidence needed to support an application for a new office L-1A visa is the exact same as that needed for an existing office L-1A visa except that the new-office petitioner must include some extra information not required of the existing-office petitioner.[43]  Put another way, new offices are subject to additional requirements, not different requirements.  If this court were to grant relief to BlueStar, USCIS would be ordered to approve the now no longer "new" company for a visa based on a petition containing more evidence than the statute and regulations require.  There is nothing in the INA prohibiting USCIS from granting a petition with more than the minimum required information and, as one district court has noted, an "L-1 visa[ is] available to employers regardless of the 'newness' of their office."[44]  There is nothing stopping this court from effecting relief

---

[41] *See* 8 C.F.R. § 214.2(l)(1)(ii)(F) (defining "[n]ew office").

[42] 8 C.F.R. § 214.2(l)(7)(i)(A)(2), (3) (authorizing approval for both existing and new office transferees).

[43] 8 C.F.R. § 214.2(l)(3)(v) (listing additional evidence that must be submitted with a petition for a new office); *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 537 F. Supp. 3d 1323, 1326 (S.D. Fla. 2021) (discussing the additional evidentiary requirements as a reason for why the fact an office may no longer be considered "new" does not moot the case).

[44] *See* 8 U.S.C. § 1101(a)(15)(L); *Canal A Media Holding, LLC*, 537 F. Supp. 3d at 1326 (rejecting USCIS's argument that the passage of time has rendered a new office petition moot).

based on the newness of the office.  We conclude that there is no statutory or regulatory bar to granting relief.

## C

The question remaining is whether this court could affirmatively grant the relief.  Under the APA, this court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."[45]  If the denial of the L-1A petition had been unlawful under the APA, this court could order USCIS to reopen and approve the petition for dates other than those initially specified and regardless of the "newness" of the office.  Under the facts of this case, this court could effectuate relief.[46]  BlueStar's claim is not moot.

## III

Moving to the merits, this court reviews grants of summary judgment *de novo*, applying the same standard of review as the district court.[47]  The standard of review for agency action under the APA is whether the agency acted in a way that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[48]  A decision is not arbitrary and capricious if the agency reviews the evidence before it and articulates a

---

[45] 5 U.S.C. § 706.

[46] *Cf. Knox v. Serv. Emps. Intern. Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012) (quoting *Ellis v. Ry. Clerks*, 466 U.S. 435, 442 (1984)).

[47] *In re Dallas Roadster, Ltd.*, 846 F.3d 112, 123 (5th Cir. 2017) (quoting *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014)).

[48] *Defensor v. Meissner*, 201 F.3d 384, 386 (5th Cir. 2000); *see also* 5 U.S.C. § 706.

rational explanation for the result reached.[49]   We may not reweigh the evidence that was before the agency to reach a different conclusion.[50]   "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."[51]

In its denial letter, USCIS determined that the evidence submitted was insufficient to prove that Lodaliya's position with Krishna Textile was executive or that his position with BlueStar would be executive, as is required for the L-1A visa.[52]   USCIS explained that it denied the petition because "[p]roviding evidence of ownership [of Krishna Textile] does not, in itself, establish eligibility . . . as an intracompany transferee in a managerial or executive capacity . . . ."   The agency also explained that the descriptions of Lodaliya's position and those of his subordinates did not establish that he was acting in an executive capacity at Krishna Textile or that he would be acting in an executive capacity at BlueStar, based in part on the fact that it was not clear that there were enough subordinates available to handle the day-to-day aspects of the job.   Finally, and as an independent basis for denial, USCIS pointed to the fact that BlueStar's estimated operating costs in its first year were over $300,000, yet Krishna Textile had net assets worth only a little more than $100,000.   The agency reasoned that this was not enough to sustain the business for a year such that it would be able to remunerate

---

[49] *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988).

[50] *Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994); *see Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence.").

[51] *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43.

[52] *See* 8 C.F.R. § 214.2(l)(1)(i) (limiting eligibility to those in executive or managerial roles); § 214.2(l)(1)(ii)(B), (C) (defining executive and managerial).

No. 21-10116

Lodaliya and support an executive position within one year of operation as required by law.[53]

BlueStar objects to each of these findings. Relying on the fact that it sent voluminous records to the agency, the company argues that the agency must not have reviewed the evidence it submitted because if it had, it would have agreed that BlueStar was eligible for the visa. But at bottom, BlueStar disagrees with the conclusion USCIS reached, points the court back to the documents themselves, and asks us to reach a different conclusion. We may not reweigh the evidence that was before USCIS; we may only ask whether the agency considered the relevant factors and reached a rational conclusion[54]—a task we take up in the next two sections.

## A

USCIS denied BlueStar's petition on two independent grounds. The first of which was that BlueStar had failed to prove that Lodaliya was acting in an executive capacity at Krishna Textile. "It is well settled that the applicant for a visa bears the burden of establishing eligibility."[55] As such, BlueStar had to prove that Lodaliya was "primarily [responsible for] [d]irect[ing] the management of the organization . . . [e]stablish[ing] the goals and policies of the organization . . . [e]xercis[ing] wide latitude in discretionary decision-making; and [r]eceiv[ing] only general supervision or direction from higher level executives . . . ."[56] BlueStar attempted to carry its burden by submitting affidavits, letters from counsel, and a business plan.

---

[53] *See* 8 C.F.R. § 214.2(l)(3)(v)(C) (describing additional evidence required for new-office petitioners).

[54] *Harris*, 19 F.3d at 1096; *see Arkansas v. Oklahoma*, 503 U.S. at 113.

[55] *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989).

[56] 8 C.F.R. § 214.2(l)(1)(ii)(C).

14

No. 21-10116

In the RFE, USCIS explicitly referenced the materials BlueStar provided and pointed out inadequacies in their level of detail and their probative value. It offered the company a chance to cure, yet BlueStar sent more of the same, including a document that created an unexplained inconsistency in Lodaliya's affidavits. In its denial letter, USCIS explained why it was denying the petition—clearly connecting the inadequacies outlined above to the controlling statute and regulations—the "relevant factors" of analysis. For example, USCIS explained that:

> The evidence, in its totality, must establish that the beneficiary performed the level of responsibility outlined in these regulations. . . . The position descriptions you provided in the affidavit do not sufficiently demonstrate . . . how these positions relieve him from performing the day-to-day responsibilities of the operation. . . . Therefore, you have not demonstrated that the foreign entity has an organizational structure sufficient to elevate the beneficiary to an executive position as defined by the [INA].

The explanation USCIS offered above is a rational one. The statute requires that Lodaliya be a true executive of the organization. To do so, he must "primarily . . . [d]irect[ ] the management" of Krishna Textile.[57] As the U.S. District Court for the Southern District of Texas recently noted in an unpublished opinion, this must relieve him of the need to focus on the organization's day-to-day functions.[58] It was not arbitrary or capricious for USCIS to conclude that Lodaliya was not an executive when confronted

---

[57] 8 C.F.R. § 214.2(l)(1)(ii)(C).

[58] *HRE-DN, L.P. v. Dep't of Homeland Sec.*, No. 4:19-CV-1893, 2020 WL 3513256, at *4 (S.D. Tex. Apr. 23, 2020) (unpublished) ("The definition requires a level of staffing that has a subordinate management structure allowing the executive employee to direct other managers and to focus on the broad goals of the organization rather than its day-to-day functions.").

with conflicting affidavits lacking in detail and suggesting that he performed nonexecutive duties.[59]

BlueStar notes that USCIS looked to the responsibilities of Lodaliya's subordinates at Krishna Textile and BlueStar to determine whether Lodaliya himself was an executive. BlueStar identifies this as legal error because the definition of executive capacity does not on its face instruct USCIS to look to the responsibilities of subordinate employees in determining whether an individual is an executive in the same way that the definition of managerial capacity does.[60] USCIS contends that executive capacity is by nature a higher office than managerial capacity and, therefore, the agency may properly look to whether the subordinates of an executive are managers to determine whether the individual "[d]irects the management of the organization . . . ."[61] Unpublished district-court decisions, as well as USCIS's Administrative Appeals Office are in accord with this position.[62] We agree.

Congress has differentiated between managers and executives. Whereas the statute and regulations define managers as responsible for managing personnel, they define executives as responsible for the

---

[59] *See, e.g.*, *Republic of Transkei v. I.N.S.*, 923 F.2d 175, 176-77 (D.C. Cir. 1991) (affirming denial of L-1 visa to Consul General of a territory because he had submitted insufficiently detailed evidence to prove that he was doing primarily executive or managerial work); *Svelte Constr., LLC v. Baran*, 368 F. Supp. 3d 1301, 1308-09 (D. Minn. 2019) (upholding USCIS denial of L-1A visa due to petitioner performing nonexecutive functions to the point they were no longer primarily performing executive functions).

[60] *See* 8 C.F.R. § 214.2(l)(1)(ii)(B)(2) (defining "managerial capacity" in part as one who manages other supervisory or professional personnel).

[61] 8 C.F.R. § 214.2(l)(1)(ii)(C).

[62] *See, e.g.*, *HRE-DN, L.P.*, 2020 WL 3513256, at *4; *Hakimuddin v. Dep't of Homeland Sec.*, No. 4:08-CV-1261, 2009 WL 497141, at *4 (S.D. Tex. Feb. 26, 2009) (unpublished); *In re W-L-D- LLC*, 2018 WL 3036116 (DHS), at *4 (AAO May 31, 2018).

management of the company as a whole.[63]  A plain reading of the text leads us to conclude that "[d]irect[ing] the management of the organization" necessarily includes directing managers of the organization.[64]  We agree with the district judge in *HRE-DN, L.P. v. Dep't of Homeland Sec.* that "[t]he definition requires a level of staffing that has a subordinate management structure allowing the executive employee to direct other managers and to focus on the broad goals of the organization rather than its day-to-day functions."[65]  It was not error to look to the duties of Lodaliya's subordinates to determine whether they were managers.  Nor was it arbitrary or capricious for USCIS to deny BlueStar's petition considering its reasoning that he was not an executive as a result.

**B**

USCIS rested its denial on two independent grounds, the second of which was that BlueStar would not support an executive position within one year of operation as required by 8 C.F.R. § 214.2(l)(3)(v)(C).  Subsection (C) requires petitioners to provide evidence of "[t]he size of the United States investment and the financial ability of the foreign entity to remunerate the beneficiary and to commence doing business in the United States . . . ."[66]  In reaching the conclusion that BlueStar would not be able to meet that requirement, USCIS looked, in part, to the value of Krishna Textile's net assets—little more than $100,000—and determined that it was not enough

---

[63] *Compare* 8 C.F.R. § 214.2(l)(1)(ii)(B)(2) (defining "managerial capacity" in part as one who manages other supervisory or professional personnel), *with id.* § 214.2(l)(1)(ii)(C)(1) (defining executive capacity as an assignment in which the employee primarily "[d]irects the management of the organization . . . .").

[64] 8 C.F.R. § 214.2(l)(1)(ii)(C)(1).

[65] 2020 WL 3513256, at *4.

[66] 8 C.F.R. § 214.2(l)(3)(v)(C)(2).

to support the operating costs of the company—estimated at more than $300,000. In USCIS's estimation, $100,000 was not enough to support a $300,000 business. One does not need to be a business expert to see the rationality in that, and it is not this court's place to reweigh that estimation.[67] As one district court has similarly held, it was not arbitrary or capricious for USCIS to deny BlueStar's petition on that basis.[68]

USCIS also based its denial on concerns about the sufficiency of detail in the affidavits and whether BlueStar's other employees would perform enough of the day-to-day functions of BlueStar to elevate Lodaliya to an executive. These same reasons underlie the agency's denial as to the first ground addressed in Part III(A)—Lodaliya's inadequate showing that his position at Krishna Textile was executive. For the same reasons as in Part III(A), this was not arbitrary or capricious.

Finally, BlueStar, in its reply brief, argues that this court may not properly look to the size of BlueStar and Krishna Textile as a factor in determining if Lodaliya was an executive because USCIS raised this issue only in its appellate briefing and not in its denial letter. It is true that the denial letter does not rest its reasoning specifically on staffing levels, but this factor alone is not dispositive. Regardless, to the extent that USCIS and this court might take staffing levels into consideration, it is well settled that staffing levels may be "used as a factor in determining whether an individual

---

[67] *See Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994).

[68] *Cf. Décor Team LLC v. McAleenan*, 520 F. Supp. 3d 1212, 1223-24, (D. Ariz. 2021) (upholding USCIS denial of an I-140 petition because petitioner's assets were less than the beneficiary's proffered wage, thus failing to establish it had the ability to pay the beneficiary his salary as required by law).

No. 21-10116

is acting in a managerial or executive capacity," and there is no indication that staffing levels were the only factor considered.[69]

## C

It was BlueStar's burden to establish that Lodaliya was an executive primarily responsible for directing the management of Krishna Textile, that he would do the same for BlueStar, and that BlueStar would be able to financially support his executive position.[70]  To meet this burden, it sent affidavits that did little more than restate the definition of executive capacity in various ways.  In the eyes of both the district court and USCIS, BlueStar failed to prove sufficiently how Lodaliya was acting in an executive capacity for purposes of the INA.  Further, the financing Krishna Textile had provided was, in the eyes of USCIS, inadequate to support BlueStar given BlueStar's own estimate of its operating expenses.  USCIS identified these as shortcomings of BlueStar's petition and explained why the petition was insufficient through repeated references to the statute and regulations governing L-1A visas.  Because USCIS articulated a rational explanation for the facts found and the decision reached, it was not arbitrary or capricious for the agency to deny the petition.[71]

---

[69] 8 U.S.C. § 1101(a)(44)(C); *see also Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070 (9th Cir. 2008) (affirming USCIS denial of L-1A visa partly based on reasoning that small size of company was unable to support managerial position).

[70] *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) ("It is well settled that the applicant for a visa bears the burden of establishing eligibility."); *see also* 8 C.F.R. § 214.2(l) (listing the eligibility criteria).

[71] *See, e.g.*, *Republic of Transkei v. I.N.S.*, 923 F.2d 175, 176-77 (D.C. Cir. 1991) (affirming denial of L-1 visa to Consul General of a territory because he had submitted insufficient evidence to prove that he was doing primarily executive or managerial work).

No. 21-10116

\*     \*     \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.