COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, Lorish and Frucci
Argued at Arlington, Virginia


**PUBLISHED**

FRANK DEVON HARRIS

v.      Record No. 2221-23-4

COMMONWEALTH OF VIRGINIA

FRANK DEVON HARRIS

v.      Record No. 0054-24-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE LISA M. LORISH
AUGUST 5, 2025

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Angela L. Horan, Judge

Meghan Shapiro (Virginia Indigent Defense Commission; Law
Office of Meghan Shapiro, on briefs), for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellee.


A trial court usually loses jurisdiction over a case 21 days after a final judgment is entered. Rule 1:1. Code § 19.2-303 creates a narrow exception: trial courts have the option "if it appears compatible with the public interest and there are circumstances in mitigation of the offense," to "suspend or otherwise modify the unserved portion" of a sentence. But the court may only do so "before the person is transferred to the Department [of Corrections], or within 60 days of such transfer." Code § 19.2-303. We have already held that if a defendant timely moves for a sentence modification under Code § 19.2-303, but the trial court fails to rule within the same time period, the trial court loses all jurisdiction to act on the motion. *Abanda v. Commonwealth*, 81 Va. App. 354, 361 (2024). These appeals present a related question—what

happens if a trial court rules on such a motion, but by the time this Court reviews it on appeal, more than 60 days have passed since the defendant's transfer to the Department of Corrections? Such an appeal is moot because if this Court were to vacate the trial court's order and remand for further proceedings, the trial court would not have jurisdiction under Code § 19.2-303 to act on the pending motion. Thus, we must dismiss Frank Devon Harris's appeals as moot.

BACKGROUND

In 2011, Harris was convicted of attempted forcible sodomy and abduction with the intent to defile. Harris was sentenced to ten years in prison with five years and six months suspended, with an indefinite period of supervised probation upon release. Once released from prison, Harris violated his probation several times. The first time, the court continued him on the same terms and conditions as his original sentencing order. The second time, the court imposed his suspended time but then resuspended all but one year. After Harris completed that period of incarceration, his probation officer submitted a third violation report, leading to his third violation hearing on August 5, 2021. At that hearing, Harris stipulated to the alleged probation violations. The court ended Harris's probation and imposed the remainder of his suspended time, leaving him with four years and six months to serve.

On September 2, 2021, Harris filed a motion to modify his sentence under Code § 19.2-303, arguing that his various mental health diagnoses and cognitive impairments left him without a "reasonable chance to succeed on probation." At a hearing on October 15, 2021, the trial court denied Harris's motion. The court, however, granted defense counsel the opportunity to file a second motion to modify if Harris could develop a more suitable probationary plan addressing the court's concerns. Harris moved the trial court to stay his transfer to the Department of Corrections to allow him to develop an improved release plan, and the court issued an order accordingly.

- 2 -

Harris also appealed the court's denial of his first motion to modify to the Court of Appeals. This Court affirmed the trial court's denial of the motion to modify and upheld the sentence imposed. *See Harris v. Commonwealth*, No. 1126-21-4 (Va. Ct. App. Nov. 1, 2022). The Supreme Court denied Harris's petition to appeal that decision.

After the failure of his first appeal, Harris filed his improved release plan in the trial court. The plan outlined his public defender's laudable efforts in securing free housing, therapeutic and psychiatric services, intellectual disability case management, community-based intensive aid and services, and medication management assistance. All the programs would have been run by, or supervised through, the local Community Service Board (CSB). The CSB wrote a letter to the court assuring that they could provide services to Harris should he be released, and noting that "[w]hile every effort will be made to support Mr. Harris' engagement in recommended services, our agency will not be responsible for reporting his adherence to the Court" and that the probation office would be responsible for monitoring Harris's adherence to his probation terms.

On October 6, 2023, the court held a hearing on the motion, where it reviewed the revised release plan and heard argument from Harris, the Commonwealth, and the Attorney General's Office. Ultimately, the court commended Harris's counsel for the effort in creating the proposed release plan but denied the motion to modify. In so ruling, the court noted that "the Community Services Board does not work for this Court. They are not accountable to me in the ordinary course, not the way that Probation is" and noted that perhaps the circumstances would be different if the court could mandate that CSB comply with its order. Furthermore, the court acknowledged how "well-intentioned" and "detailed" the proposed release plan was, but still found it insufficient to address the public safety risk posed by Harris's release.

After the trial court denied his motion to modify, the Department transferred Harris to its Nottoway Correctional Center on November 29, 2023. Harris currently resides in Department custody at Green Rock Correctional Center.[1]

On December 15, 2023, Harris again moved the trial court to modify under Code § 19.2-303, arguing that the court improperly assigned him the burden of identifying his own accommodations for his disabilities, that this error violated his constitutional rights, and that the trial court erred in finding that it could not bind the CSB. The court denied his motion on December 20, 2023. Harris now appeals to this Court.

ANALYSIS

Harris's substantive argument on appeal is that the trial court abused its discretion in denying his motion to modify under Code § 19.2-303. But before we can consider the merits, we must assess whether the trial court would lack any ability to grant Harris's requested relief on remand, thus requiring us to dismiss these appeals as moot. *See Hollowell v. Va. Marine Res. Comm'n*, 56 Va. App. 70, 77-78 (2010) ("'[D]ismissal is the proper remedy' when an event occurs while a case is pending on appeal that renders it moot—that is, 'renders it impossible' for this Court to grant appellant the relief requested." (quoting *Jackson v. Marshall*, 19 Va. App. 628, 635 (1995))). This requires us to consider the intersection of this Court's power to remand and the trial court's jurisdiction under Code § 19.2-303. We review questions of subject matter jurisdiction de novo. *Gray v. Binder*, 294 Va. 268, 275 (2017). These appeals also require us to

---

[1] On May 2, 2025, this Court asked counsel to prepare supplemental briefing on whether Harris's claim that the circuit court erred in denying his motion to modify his sentence under Code § 19.2-303 was moot. In support of its supplemental briefing, the Commonwealth submitted an exhibit containing an affidavit from the Director of Inmate Management Services for the Virginia Department of Corrections, confirming that Harris was transferred to the Department of Corrections on November 29, 2023. To determine whether an action has become moot "during the pendency of an appeal," "[a]n appellate court may consider extrinsic evidence that is not already part of the record." *Commonwealth v. Browne*, 303 Va. 90, 92 (2024).

interpret Code § 19.2-303, a question of statutory interpretation which we also take up de novo. *Stahl v. Stitt*, 301 Va. 1, 8 (2022).

> I. Code § 19.2-303 creates a limited exception to Rule 1:1(a)'s finality rule, contingent on when a defendant enters the custody of the Department of Corrections.

A sentencing order is the final order in a criminal case. *Dobson v. Commonwealth*, 76 Va. App. 524, 528 (2023). "All final judgments, orders, and decrees . . . remain under the control of the trial court and may be modified, vacated, or suspended for [21] days after the date of entry, and no longer." Rule 1:1(a). "This rule is 'mandatory in order to assure the certainty and stability that the finality of judgments brings. Once a final judgment has been entered and the [21-day] time period of Rule 1:1 has expired, the trial court is thereafter without jurisdiction in the case.'" *Abanda*, 81 Va. App. at 359 (alteration in original) (quoting *Super Fresh Food Mkts. of Va. Inc. v. Ruffin*, 263 Va. 555, 563 (2002)). The 21-day period is not tolled or extended by "the filing of post-trial or post-judgment motions," or the "court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment." *Super Fresh*, 263 Va. at 560.

There are a few exceptions where the General Assembly has specifically extended a "trial court's jurisdiction in criminal cases beyond the 21-day period specified in Rule 1:1." *Abanda*, 81 Va. App. at 359. Code § 19.2-303 is one of these exceptions, and it "controls over Rule 1:1 in determining whether the trial court had jurisdiction to consider [the defendant's] motion." *Id.* (alteration in original) (quoting *Vanmeter v. Commonwealth*, 80 Va. App. 324, 331 (2024)).

Code § 19.2-303 states that "[i]f a person has been sentenced for a felony to the Department of Corrections . . . [and] it appears compatible with the public interest and there are circumstances in mitigation of the offense," the circuit court "may, at any time before the person is transferred to the Department, or within 60 days of such transfer, suspend or otherwise modify

the unserved portion of such a sentence." Thus, with this statute, the General Assembly

extended the time available to a circuit court to modify or reconsider a sentence that would

otherwise be final; instead of 21 days after entry of the sentencing order under Rule 1:1, the court

has up to 60 days after a defendant has been transferred to Department custody to modify a

sentence under Code § 19.2-303.

In *Abanda,* our Court made clear that the defendant's custodial status at the time the court

rules on a motion under Code § 19.2-303 is the relevant trigger for jurisdiction. 81 Va. App. at

362. In doing so, we rejected the argument that "as long as the motion is filed within that 60-day

period . . . the motion is timely and the court retains jurisdiction to act at any time after that." *Id.*

at 361. We affirmed that, even after an amendment to the statute,[2] "the operative date . . . is

when the court makes its ruling, not when the motion is filed." *Id.* (quoting *Stokes v.*

*Commonwealth*, 61 Va. App. 388, 395 (2013)). We ultimately held that a trial court lacked

jurisdiction to modify a sentence where a defendant filed a Code § 19.2-303 motion on his 59th

day in Department custody but did not receive a hearing until two months later. *Id.*

With these principles in mind, we address whether there is a live controversy before us.

II. These appeals are moot because even if this Court vacates the orders denying the motion to modify, the trial court would lack jurisdiction to issue any ruling on the motion.

"A case becomes moot 'when the issues presented are no longer "live" or the parties lack

a legally cognizable interest in the outcome.'" *Howard v. Commonwealth*, 74 Va. App. 739, 752

(2022) (quoting *Ingram v. Commonwealth*, 62 Va. App. 14, 21 (2013)). "Whenever it appears

---

[2] In 2021, the General Assembly amended the statute to extend a court's jurisdiction to include "any time before the person is transferred to the Department, *or within 60 days of such transfer*." Code § 19.2-303 (emphasis added). *Abanda* merely affirmed the prior decisions in *Akers v. Commonwealth*, 298 Va. 448, 453 (2020), and *Stokes v. Commonwealth*, 61 Va. App. 388, 395 (2013), which were issued prior to the 2021 amendment, and applied those decisions in light of the statutory amendment.

that there is no actual controversy between the litigants[,] it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case." *Va. Broad. Corp. v. Commonwealth*, 286 Va. 239, 247-48 (2013) (internal quotation marks, citation, and original alterations omitted). Without a live controversy, we must dismiss the appeal because "courts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative." *Commonwealth v. Harley*, 256 Va. 216, 220 (1998) (quoting *City of Fairfax v. Shanklin*, 205 Va. 227, 229-30 (1964)).[3]

An appeal may involve "a live controversy at its inception" but "become moot during the course of litigation." *Commonwealth v. Browne*, 303 Va. 90, 91 (2024) (quoting *Berry v. Bd. of Supervisors*, 302 Va. 114, 129 (2023)). "Changing events during litigation may make it impossible for a court to award a litigant the relief requested." *Berry*, 302 Va. at 129.

It is well established that an appellate court may remand a case to the trial court for further proceedings long after the original judgment has been entered and the 21-day period under Rule 1:1 has passed. "[A]bsent a specific mandate to the contrary, a statutory grant of appellate jurisdiction necessarily implies such a power [to remand]." *Jones v. Willard*, 224 Va. 602, 606-07 (1983). Thus, "[a]fter an appeal, an appellate court may remand a case to the trial court, an action which necessarily carries a grant of jurisdiction to act on the case as required by the remand and pleadings of the parties." 1 Virginia Criminal Law and Procedure § 2.5; *see also Chafin v. Chafin*, 568 U.S. 165, 173-74 (2013) ("Jurisdiction to correct what had been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal." (citing *Northwestern Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891))).

---

[3] Because of these constraints on our own jurisdiction, we raised the question of mootness sua sponte and invited the parties to submit supplemental briefing on the matter.

In an appeal properly before us, this Court may vacate a trial court's final judgment and remand with instructions to the trial court to take further action on a case. This comports with Rule 1:1 because the jurisdictional limitation in Rule 1:1 is tied to the entry of a valid final judgment. If our Court vacates that final judgment and remands for further proceedings, the case simply resumes before the trial court in the same posture it was in before the (later-vacated) judgment was entered.

But an appellate court's authority to remand does not confer an authority to create jurisdiction where jurisdiction is otherwise absent. And it is not uncommon that intervening circumstances mean that a case has become moot because—even given the appellate authority to remand—the trial court could no longer issue any relief to the appellant. For example, when an appellant challenges the length of a criminal sentence but completes the sentence and is released from incarceration before the appeal is resolved, that appeal is moot. We must dismiss these cases because remanding such a sentencing appeal would be futile when, absent any "collateral consequences" from the alleged error,[4] there would be no relief for the trial court to give. After a sentence has been fully served, the "incarceration cannot be 'undone' by the [appellate] Court." *Browne*, 303 Va. at 94 (quoting *Spencer v. Kemna*, 523 U.S. 1, 8 (1998)); *see id.* (holding that an appeal challenging the revocation of a petitioner's parole became moot after the petitioner finished serving the underlying criminal sentence); *see also United States v. Hardy*, 545 F.3d 280, 283-84 (4th Cir. 2008) (appeal challenging revocation of supervised release was moot because appellant finished serving criminal sentence and failed to identify any remaining collateral consequences).

---

[4] For example, an appeal that seeks to invalidate a conviction or adjudication altogether is not moot because the impact of the conviction itself is a collateral consequence that is "sufficient to sustain a continued controversy." *E.C. v. Va. Dep't of Juvenile Justice*, 283 Va. 522, 536 (2012).

This case presents another circumstance where, despite our authority to remand, there would be no live controversy left for the trial court to resolve. The problem is not Rule 1:1, but Code § 19.2-303. If we reversed the final judgment here, and the case resumed the same posture it was in before the trial court denied the motion to modify, the motion would still be pending before the trial court—but more than 60 days after Harris's transfer to the Department of Corrections. This would leave Harris in the same position as the appellant in *Abanda.*

In *Abanda*, we held that the appeal was moot because the appellant's transfer to the Department of Corrections meant that the trial court did not have jurisdiction to rule on a pending motion to modify more than 60 days later. 81 Va. App. at 362. While the trial court had *never* ruled on that motion in the first place—whereas here the court did issue a ruling that Harris appealed—that is a distinction without a difference. On a hypothetical remand, Harris's motion to modify would be pending before the trial court more than 60 days after he was transferred to the Department of Corrections. Thus, just like in *Abanda,* the trial court would have no jurisdiction to rule.

Once the strict time limitation in Code § 19.2-303 is exceeded, "the parties and the case" could no longer be "properly before" that court. *Chafin*, 568 U.S. at 173-74. Any purported new order issued by the court at that point would be void ab initio for want of jurisdiction. *Terry v. Commonwealth*, 81 Va. App. 241, 251 (2024). So, without any relief available to Harris from his appeal, there is no live controversy before us.

III. Our interpretation of Code § 19.2-303 does not lead to an absurd result.

Under the statute's plain language, which guides our opinion here, appellate review of a motion to modify under Code § 19.2-303 is undoubtedly limited. But this limitation does not lead to an absurd result, as Harris argues. "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or

alter its plain meaning." *Berry v. Barnes*, 72 Va. App. 281, 293 (2020) (quoting *Jackson v. Fid. & Deposit Co. of Md.*, 269 Va. 303, 313 (2005)). Limited appellate review for decisions rendered under Code § 19.2-303 follows from the statute's plain language, which does not obligate a trial court to adjudicate a timely filed motion in the first place. *See* Code § 19.2-303 ("[T]he court . . . *may*, at any time before the person is transferred to the Department, or within 60 days of such transfer, suspend or otherwise modify the unserved portion of such a sentence." (emphasis added)); *Abanda*, 81 Va. App. at 362 (finding no relief for appellant where the trial court did not issue an order on a motion timely filed under Code § 19.2-303). Given that the statute affords no right to an adjudication of the motion, we cannot say it is absurd that the statute permits only limited appellate review of any order entered under Code § 19.2-303.

We also note that there remain "several avenues by which a defendant who has sought relief under Code § 19.2-303 can seek to preserve the status quo" and ensure the trial court's jurisdiction remains intact on remand from an appeal. *Akers v. Commonwealth*, 298 Va. 448, 453 (2020). For every person sentenced, Code § 19.2-310 mandates that the court clerk transmit a sentencing order to the Department. "[T]he Director shall receive all such persons [convicted of a felony] into the state corrections system within sixty days of the date on which the final sentencing order is mailed by certified letter or sent by electronic transmission to the Director." *Id.* at 454 (second alteration in original) (quoting Code § 53.1-20). "Without a sentencing order, the DOC will refrain from taking a defendant into custody." *Id.* Thus, a defendant can ask the court to suspend transmission of the sentencing order, allowing the court to preserve the status quo to consider a motion under Code § 19.2-303. Alternatively, a defendant can ask the trial court to stay transfer and "order the DOC to refrain from taking [him] into custody as a means of protecting its jurisdiction" pending appeal. *Id.* This is precisely what happened during Harris's first appeal in this very case.

- 10 -

Had Harris again moved to stay transfer in light of his second appeal, the case might have come to us with an actual controversy still intact.[5]

We recognize that these methods of preserving an appeal based on a denial of a Code § 19.2-303 motion are far from perfect. But we have long recognized that Code § 19.2-303's creation of an "absolute event when a trial court can no longer modify a sentence" has the potential to create harsh results. *Stokes*, 61 Va. App. at 398. In *Stokes*, a trial court sentenced the defendant and then ordered that he remain in local custody until the completion of charges against a co-defendant. *Id.* at 391. Despite that order, the defendant was "mistaken[ly] transport[ed]" to the Department of Corrections. *Id.* at 392. While the trial court sought to grant the defendant relief "because of appellant's assistance to the Commonwealth in a related criminal case," we interpreted the then-in-effect version of Code § 19.2-303 based on its plain language, noting it "contain[ed] no exceptions." *Id.* at 392, 398. We also observed that "the legislature could have chosen less restrictive language," or made an exception for "manifest injustice" as it did in other statutes. *Id.* at 398. Ultimately, we concluded "[a]ny potential unfairness or inequity arising from this statute, as well may be the case here, must be resolved by the legislature, not the judiciary." *Id.*

As *Abanda* shows, a defendant has no recourse when a trial court fails to rule on a pending motion to modify before the 60th day from the defendant's transfer to the Department of

---

[5] This is one reason we could not say that this issue is "capable of repetition, yet evading review," which is an exception to the mootness doctrine. *Browne*, 303 Va. at 95 (explaining that the exception applies when the "challenged action is in its duration too short to be fully litigated prior to cessation or expiration"). Another reason is that Harris will face no future term of probation or additional suspended sentence for this offense. *Id.* (noting that the exception also requires that "there is a reasonable expectation that the same complaining party will be subject to the same action again").

Corrections.[6]  81 Va. App. at 362.  And, as Harris's case demonstrates, even where a trial court issues a ruling, many appeals taken from those rulings will be mooted unless the defendant takes an affirmative action to prevent that from occurring.  A defendant could move the trial court to issue a stay of transfer, but if the court denies that motion, or even issues a stay that is mistakenly disregarded as was the case in *Stokes*, a defendant has no recourse.  As we held in *Stokes*, "[a]ny potential unfairness or inequity arising from this statute . . . must be resolved by the legislature, not the judiciary."  61 Va. App. at 398.[7]

Here, the date of Harris's transfer to Department custody—November 29, 2023—is dispositive of whether his appeals are moot.  His date of transfer started the 60-day countdown under Code § 19.2-303.  Thus, when Harris filed a notice of appeal on December 22, 2023, a live

---

[6] This Court has yet to resolve whether "transferred to the Department" refers to the date a defendant is physically moved to a facility operated by the Department of Corrections or the date when a defendant's custody is administratively transferred to the Department of Corrections, regardless of whether the defendant is ever physically moved.

[7] Some states have managed to do just that.  For example, the rule governing similar motions in Maryland gives trial courts "revisory power" over a sentence based on whether a motion is "filed within 90 days after imposition of a sentence."  As long as the motion is timely filed, the trial court has jurisdiction to revisit the sentence for up to "five years from the date the sentence originally was imposed."  Md. Rule 4-345(e)(1); *see State v. Thomas*, 322 A.3d 32, 34 (Md. 2024).  And in Florida,

> [a] court may reduce or modify . . . a legal sentence imposed by it . . . within 60 days after the imposition, or within 60 days after receipt by the court of a mandate issued by the appellate court on affirmance of the judgment and/or sentence on an original appeal, or within 60 days after receipt by the court of a certified copy of an order of the appellate court dismissing an original appeal from the judgment and/or sentence, or, if further appellate review is sought in a higher court or in successively higher courts, within 60 days after the highest state or federal court to which a timely appeal has been taken under authority of law, or in which a petition for certiorari has been timely filed under authority of law, has entered an order of affirmance or an order dismissing the appeal and/or denying certiorari.

Fla. R. Crim. P. 3.800(c).

controversy continued because the trial court still had jurisdiction to modify Harris's sentence under Code § 19.2-303. But for the trial court to have had jurisdiction to grant the relief Harris sought, this Court would have needed to remand the motion before January 28, 2024—60 days from Harris's transfer. That date has now come and gone. Under the current version of Code § 19.2-303, these appeals are moot because, even if we reversed and remanded, the trial court could not provide any relief.

## CONCLUSION

For these reasons, we dismiss Harris's appeals.

*Dismissed.*